UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                :

JEAN-CLAUDE FRANCHITTI,            :

                         :

              Plaintiff,       :

                         :           21-CV-2174 (JMF)

       -v-                 :

                         :       <u>OPINION AND ORDER</u>

COGNIZANT TECHNOLOGY SOLUTIONS  :
CORPORATION et al.,           :

                         :

             Defendants.     :

                         :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Jean-Claude Franchitti, a white man who worked for Defendant Cognizant

Technology Solutions Corporation ("Cognizant") for almost ten years, brings claims of disparate

treatment on the basis of race and national origin and retaliation pursuant to the Civil Rights Act

of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-3 ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 296 (the

"NYSHRL").  Cognizant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, to dismiss on a variety of grounds, mostly procedural.  For the reasons that follow,

Cognizant's motion to dismiss is granted in part and denied in part.  The upshot is that Franchitti

can pursue only his Title VII and NYSHRL retaliation claims based on his termination.

## BACKGROUND

      In considering a Rule 12(b)(6) motion, courts are generally limited to the facts alleged in

the complaint and are required to accept those facts as true.  *See, e.g.*, *Burch v. Pioneer Credit*

*Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  In addition, "the complaint is

deemed to include any written instrument attached to it as an exhibit or any statements or

documents incorporated in it by reference." *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at 153. Here, the Equal Employment Opportunity Commission ("EEOC") Letter of Determination, issued on February 5, 2020, ECF No. 45-1 ("EEOC Determination"), is attached as an exhibit to the Amended Complaint, ("Complaint"), ECF No. 45 ("Compl."). In addition, the Complaint makes repeated reference to the charges that Franchitti filed with the EEOC on October 7, 2016, ECF No. 53-1 ("EEOC Charge") and the EEOC's November 16, 2020 Notice of Right to Sue, ECF No. 53-3 ("EEOC Right to Sue"), *see* Compl. ¶¶ 41-48, 50. Accordingly, the Court may properly consider these documents without converting Cognizant's motion to dismiss into a motion for summary judgment. *See, e.g.*, *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference."); *see also, e.g.*, *Collins v. City of New York*, 156 F. Supp. 3d 448, 455 n.4 (S.D.N.Y. 2016) (same); *Willingham v. Sw. Airlines*, No. 1:15-CV-1511 (TJM), 2016 WL 3747931, at *4 (N.D.N.Y. July 11, 2016) (considering an EEOC charge on a motion to dismiss even where the plaintiff made no reference to it because the charge "is a public filing and part of an administrative proceeding"). Thus, the facts that follow are drawn from these documents and the Complaint.

## A.  Franchitti's Employment at Cognizant

Cognizant is a large American information technology and consulting company that employs roughly 46,000 people in the United States and about 200,000 in India. Compl. ¶ 10. Franchitti worked for Cognizant from his home office in New York, *id*. ¶ 3, and regularly

received "exceeds expectations" performance reviews from the time he was hired, in 2007, through 2013, *id*. ¶¶ 11-12, 15.  In 2012, Cognizant tapped Franchitti to lead the Technology Consulting Team (known as "GTC") of the Global Technology Office ("GTO"), which "provided technology consulting services to clients in the United States, the United Kingdom, and South America."  *Id*. ¶ 13.  In that position, he managed roughly 150 employees, "successfully oversaw roughly $20 million per year in client business, achieved exemplary client satisfaction, and added new clients to GTC's portfolio."  *Id*. ¶¶ 13-15.  In 2014, Cognizant tasked Franchitti with leading a sub-unit of a struggling business unit called Cognizant Business Consulting ("CBC"), known as CBC-GTO, which "performed essentially the same consulting functions as those performed by [his prior] GTC business."  *Id*. ¶ 16.

Shortly thereafter, Raj Bala, Cognizant's Chief Technology Officer and Senior Vice President, who worked out of Cognizant's offices in India and was one of Franchitti's supervisors, "created a brand new consulting unit within GTO called 'GTO Labs,' which would be run from India and staffed from the United States."  *Id*. ¶¶ 14, 17.  Franchitti's CBC-GTO and Bala's GTO Labs "overlapped considerably, and competition and conflict emerged between them."  *Id*. ¶ 18.  There was also a racial distinction between the groups: "While GTO Labs staffing was compromised almost entirely of Indians of South Asian descent, CBC-GTO had more non-South Asians."  *Id*. ¶ 19.  According to the Complaint, Bala "sought to use his staffing authority to . . . allow the groups to work in harmony . . . by homogenizing CBC-GTO's staff to reflect the demographics of GTO Labs — that is, by eliminating or otherwise diminishing non-South Asians" from CBC-GTO.  *Id*.  Additionally, Bala "believed that people originating from the east — *e.g.*, South Asians and Indians — were technologically superior to those originating from the west."  *Id*. ¶ 20.  Franchitti alleges that Bala "often spoke of his racial animus,"

claiming that "Americans are worthless when it comes to technology," "Indians are superior," and that more experienced non-South Asian workers, to whom he referred to as "[h]eavy weights," "aren't needed" because "[t]heir abilities are inferior to Indian workers."  *Id.* ¶¶ 21, 27.  Moreover, Franchitti alleges that "[t]his prejudice was shared throughout Cognizant, and infected the company's employment decisions," resulting in "the overwhelming majority of Cognizant's United States workforce [being] comprised of Indian nationals."  *Id.* ¶ 22.

Franchitti's CBC-GTO team included "a number of non-South Asian 'heavy weights' — *i.e.*, experienced employees," whom Bala "wanted 'to get rid of' . . . so that positions would open up for South Asians and Indians."  *Id.* ¶ 28.  Franchitti "vocally opposed Mr. Bala's efforts to dispose of experienced members of [his] team," explaining that it was "inappropriate to favor 'Indians' over 'westerners' in employment actions," and that Bala's prejudices were harmful and incorrect.  *Id.* ¶ 29.  The Complaint alleges that, by 2015, due to Franchitti's frequent complaints about Bala's alleged discriminatory actions and views, Bala "had developed a personal animosity towards" Franchitti, and Franchitti's  "work life . . . became miserable."  *Id.* ¶ 30.  Bala undercut Franchitti's team, steering business to GTO Labs instead; denied his team resources; excluded him from key meetings; "grew critical of virtually every aspect" of his work; and generally treated him "with disdain and contempt."  *Id.*  Franchitti was eligible for a promotion in July 2015, but after Bala spoke critically of Franchitti and recommended against the promotion, it was denied.  *Id.* ¶ 32.  Franchitti maintains that he "was denied this promotion on the basis of his race and national origin."  *Id.* ¶ 33.  Of the several dozen GTO employees whose promotions Bala approved in July 2015, only one was a non-South Asian employee.  *Id.* ¶¶ 33-34.

After denying Franchitti his promotion, Bala continued to "focus on eliminating . . . Franchitti's 'heavy weights,'" directing Franchitti to "off load" or "get rid" of multiple non-

South Asian employees in order to open up positions for Indian nationals for whom Cognizant had secured work visas. *Id.* ¶ 35. Other non-South Asian employees reached out to Franchitti with their complaints about discrimination, and Franchitti raised the issue in meetings with multiple leaders at Cognizant, including two of his supervisors and representatives of the Human Resources department. *Id*. ¶ 37. He met with Neil Neveras, Cognizant's "Chief People Officer," on at least four occasions between April 4, 2016, and June 27, 2016, expressing his concerns about discrimination and his fears about retaliation. *Id.* ¶¶ 37-38. On June 27, 2016, Neveras "suggested to Mr. Franchitti that [his] complaints were not based on legitimate discrimination concerns but were instead the result of an ongoing pattern of Mr. Franchitti not collaborating with Mr. Bala," and that Neveras "could not be involved in the interpersonal dispute between the two executives." *Id*. ¶ 38. Franchitti objected to this characterization and left a voicemail message for Neveras later that night "asking him to look into discrimination issues further and to ensure that [he] would not be retaliated against for complaining about discrimination." *Id.* Neveras texted Franchitti the next day to tell him that he had received the voicemail, but he never called Franchitti. *Id.* ¶ 39. A few weeks later, on July 19, 2016, Cognizant terminated Franchitti's employment. *Id*. ¶ 40. Cognizant assured him that "his termination was not performance related" but "provided no justification for" it. *Id.* He was "promptly replaced by Purna Roy, who [i]s of South Asian race and Indian descent." *Id.*

## B.  Prior Proceedings

On October 7, 2016, Franchitti filed a charge with the EEOC, alleging unlawful discrimination and retaliation. *Id*. ¶ 41; *see also* EEOC Charge. "Unbeknownst to Mr. Franchitti, the EEOC, since at least 2015, had been conducting a nationwide discrimination investigation of Cognizant, and the agency investigated Mr. Franchitti's charge as part of that

investigation." Compl. ¶ 41. On February 5, 2020, the EEOC issued a Letter of Determination concluding that "[c]redible evidence support[ed Franchitti's] contention that he was discharged in retaliation for his complaints regarding national origin discrimination" and that, according to a "statistical analysis" in the broader investigation, there was "reasonable cause to believe that, since December 4, 2014, [Cognizant had] discriminated against a nation-wide class of non-Indian employees on the basis of race and national origin in violation of Title VII by removing them from assignments that they were qualified for, refusing to assign them to new projects, and terminating them when they remained unassigned." *Id.* ¶¶ 41, 43, 50; *see also* EEOC Determination 2-3. The EEOC "determined that there [was] a violation of [Title VII]" and sent Cognizant "proposed terms of conciliation" that would "eliminate the alleged unlawful employment practices." EEOC Determination 3.

Thereafter, an EEOC representative mediated settlement discussions between Cognizant and Franchitti, and, "[b]y July 1, 2020, after months of negotiation, the parties had reached an agreement on the amount Cognizant would pay Mr. Franchitti to settle his claims." Compl. ¶ 44. Cognizant was tasked with preparing a draft settlement, which it sent to Franchitti on September 29, 2020. *Id.* ¶¶ 44-45. The agreement included as a term a "certification" that Franchitti had "no pending complaints, charges, or claims on file against Cognizant with a federal, state or local court, agency, or administrative office." *Id.* ¶ 45. Unbeknownst to Cognizant, however, Franchitti had in 2017 filed a *qui tam* case against Cognizant under the False Claim Act, challenging Cognizant's allegedly fraudulent visa practices. *Id.* The *qui tam* complaint was unsealed on September 8, 2020, and served on Cognizant on October 5, 2020. *Id.* Cognizant refused to modify or remove the certification, Franchitti refused to withdraw the *qui tam* claim, and the parties failed to consummate their agreement. *Id.* ¶¶ 45-47. Accordingly, the EEOC

issued a Notice of Right to Sue on October 26, 2020, although, due to a mailing error, Franchitti

did not receive the notice until November 16, 2020.  *Id.* ¶ 48 & n.1; *see also* EEOC Right to Sue.

Upon receiving the Notice of Right to Sue, Franchitti "sought to be added as a named

plaintiff in an ongoing putative class action discrimination lawsuit" in the Central District of

California, *Palmer v. Cognizant Technology Solutions Corp*., No. 2:17-6848 (C.D. Cal.)

("*Palmer*"), which was filed in September 2017 and brought "class-wide allegations that

Cognizant discriminates on the basis of race and national origin in staffing, promotions, and

terminations."  *Id.* ¶ 48; *see also Palmer*, ECF No. 45.  The *Palmer* court permitted the plaintiffs

to amend their complaint to allow Franchitti to serve as a named plaintiff for the existing Title

VII class even though amendment was otherwise untimely because Franchitti had only recently

received his Notice of Right to Sue.  *Id.* ¶ 49; *see also Palmer*, ECF No. 144, at 6 ("*Palmer*

Order") ("Accordingly, Plaintiffs may amend their SAC to include Franchitti's allegations of

discrimination and add him as a named Plaintiff for the Title VII class claims asserting disparate

treatment and disparate impact relating to Cognizant's promotion and termination practices.").

By contrast, the *Palmer* court declined to allow Franchitti to bring his Section 1981 claim

because "administrative exhaustion is not required for claims under section 1981 as it is for Title

VII claims," and he therefore could not "justify his failure to act promptly."  *Id.* at 3-4.  In

addition, the *Palmer* court found that Franchitti's "allegations of retaliation and individual Title

VII claim . . . raise[d] new legal theories on his own behalf that are distinct from the existing

discrimination claims," and that joinder would "substantially alter the focus of the litigation and

require Cognizant to undertake a new course of defense."  *Palmer* Order 6.

On February 16, 2021, in accordance with this Court's Electronic Case Filing Rules &

Instructions, Franchitti filed a motion for leave to file the initial complaint in this case under seal,

seeking to redact "portions of the Complaint that refer to specific actions taken or statements

made by Plaintiff, Defendants, and/or the [EEOC] during the conciliation process . . . out of an

abundance of caution" because "[a] federal court in a related putative class action lawsuit against

Defendants" (namely, the *Palmer* court) had "ruled that the information Plaintiff seeks to seal in

his complaint should not be publicly disclosed."  No. 21-MC-193 (RA), ECF No. 1-1, at 1; *see*

S.D.N.Y. Electronic Case Filing Rules & Instructions § 6.14 (requiring a party seeking to file a

new civil case under seal to "first electronically fil[e] a motion to seal in a new miscellaneous

case in ECF," and, if the motion is granted, to then "file the new civil case in the traditional

matter").  Judge Abrams, sitting in Part I, granted the motion on February 17, 2021, although —

for reasons that are unclear — the Order was not docketed by the Clerk's Office until March 12,

2021.  *Id.* at ECF No. 3.  Franchitti opened this civil case that same day.  *See* ECF No. 2.

## LEGAL STANDARD

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts

set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See,*

*e.g.*, *Burch*, 551 F.3d at 124.  A claim will survive a Rule 12(b)(6) motion, however, only if the

plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted

unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*,

550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line

from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

**DISCUSSION**

Cognizant moves to dismiss the claims in the Complaint for a variety of reasons, mostly procedural. A few of its arguments warrant little discussion. Specifically, upon review of the Complaint and the parties' memoranda of law, the Court rules as follows:

(1) Franchitti's disparate treatment claims brought pursuant to Section 1981 and the NYSHRL (Count I and part of Count IV) are dismissed pursuant to the "first-filed" rule because they are based on the same facts as the claims being litigated in the *Palmer* litigation. *See, e.g.*, *N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am. Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). Franchitti concedes that much. *See* ECF No. 58 ("Pl.'s Opp'n"), at 1 n.1, 6. The parties disagree only about whether the claims should be dismissed with or without prejudice. *Compare* Pl.'s Opp'n 6, *with* ECF No. 62 ("Def.'s Reply"), at 9-10. But because the *Palmer* "case [will] have no *res judicata* or collateral estoppel effect on [this] case until it [comes] to final judgment, . . . dismissal with prejudice [would be] improper." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 (5th Cir. 1992); *accord First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989); *see also* Sandra L. Potter, *The First-Filed 'Rule' and Moving to Dismiss Duplicative Federal Litigation*, 33 Rev. Litig. 603, 607 n.9 (2014). Accordingly, these claims are dismissed on consent, but *without* prejudice.

(2) Franchitti's "pattern or practice" claims are dismissed because, as he concedes, such a claim cannot be maintained by an individual plaintiff. Pl.'s Opp'n 19 n.12; *see, e.g.*, *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149-50 (2d Cir. 2012).

(3) Franchitti's hostile work environment claims are dismissed as abandoned because he makes no argument in response to Cognizant's contention that he "offers no facts to support" the claims. ECF No. 50 ("Def.'s Mem."), at 23; *see, e.g.*, *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).

That leaves only Franchitti's retaliation claims under Section 1981, Title VII, and the NYSHRL, of which there are two sets: claims under all three laws that Franchitti's termination was retaliatory; and claims under all three laws that Cognizant's "failure to settle" Franchitti's discrimination claims was retaliatory. The Court will address each set of claims in turn.

## A. Franchitti's Retaliation Claims Based on His Termination

The Court begins with Franchitti's retaliation claims based on his termination.  As noted, Franchitti brings such claims under Section 1981, Title VII, and the NYSHRL.  Cognizant moves to dismiss all three as untimely and the Title VII claim on the ground that Franchitti failed to exhaust his administrative remedies.  The Court will address the Section 1981 claim first.

### 1. Section 1981 Claim

Cognizant seeks dismissal of Franchitti's Section 1981 claim on the ground that it is time barred.  Def.'s Mem. 8-9.  Ordinarily, a statute of limitations is "an affirmative defense that must be raised in the answer."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).  It is well established, however, that "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Id.* (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) (summary order) (affirming dismissal on statute of limitations grounds where the plaintiff's own allegations showed that the statute of limitations had expired).  Retaliation claims brought pursuant to Section 1981 are generally subject to a four-year statute of limitations, although a shorter three-year statute of limitations applies to some claims, such as those brought for failure to promote.  *McCalla v. City of New York*, No. 15-CV-8002 (LAK) (AJP), 2017 WL 3601182, at *31-33 (S.D.N.Y. Aug. 14, 2017), *report and recommendation adopted*, 2017 WL 4277182 (S.D.N.Y. Sept. 22, 2017); *accord Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).

Franchitti does not dispute that he filed this lawsuit more than four years after his Section 1981 claim based on his termination accrued.  Pl.'s Opp'n 15.  Citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), Franchitti argues that it is nevertheless "not

time-barred because the statute of limitations was tolled by the *Palmer* litigation due to *American Pipe* class action tolling." Pl.'s Opp'n 18 (capitalization altered). In *American Pipe*, the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983), the Court "clarified that the *American Pipe* tolling rule applies not only to putative class members who seek to intervene in an action, but also to would-be class members who later file their own independent actions." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 104 (2d Cir. 2013). A class member's subsequent claim "need not be identical to the initial class action claim," *Josephson v. United Healthcare Corp.*, No. 11-CV-3665 (JS) (ETB), 2013 WL 3863921, at *4 (E.D.N.Y. July 24, 2013), because "*American Pipe* tolling is properly extended to claims of absent class members that involve the same evidence, memories, and witnesses as were involved in the initial putative class action," *Cullen v. Margiotta*, 811 F.2d 698, 721 (2d Cir. 1987).

Significantly, however, "in order to prevent unfair surprise and prejudice, . . . courts have held that . . . claims receiving the benefit of *American Pipe* tolling [must] challenge the same conduct as the class action, such that the class action is sufficient to alert the defendants sued there to preserve the evidence regarding that conduct." *McCalla*, 2017 WL 3601182, at *35 n.55 (internal quotation marks and citations omitted). Courts must "make certain . . . that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit." *Crown, Cork & Seal Co.*, 462 U.S. at 355 (Powell, J., concurring). In fact, the Supreme Court itself has observed that "the tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action

11

subsequently asserted.  This factor was more than a mere abstract or theoretical consideration

because the prior filing in each case necessarily operated to avoid the evil against which the

statute of limitations was designed to protect." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454,

467 (1975); *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) (holding that

where a class action complaint raised "promotion discrimination, hostile work environment, and

retaliation claims," *American Pipe* tolling did not extend the statute of limitations for "a claim

for compensation discrimination" because "the tolling rule does not 'leave[] a plaintiff free to

raise different or peripheral claims'" (quoting *Crown, Cork & Seal Co.*, 462 U.S. at 354 (Powell,

J., concurring))).  Thus, the question for the Court here is whether the Section 1981 retaliation

claim that Franchitti brings is "[]sufficiently related to the claims stated by the predicate class[]"

to trigger *American Pipe* tolling.  *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-

MDL-2262 (NRB), 2015 WL 4634541, at *136 (S.D.N.Y. Aug. 4, 2015).

It is not.  Franchitti argues that his Section 1981 retaliation claim and the disparate impact

claims in the *Palmer* litigation are sufficiently related because "the evidence necessary to defend

against claims (as to Mr. Franchitti) are [sic] the same in both cases."  Pl.'s Opp'n 19-20.  But, as

the *Palmer* court previously found, the elements of a retaliation and a disparate impact claim are

distinct.  *See Palmer* Order 6 ("Cognizant argues that Franchitti's individual retaliation claims

would require it to engage in more fact discovery and defend against unique legal arguments

. . . .  The Court agrees that the individualized retaliation claim would substantially alter the

focus of the litigation and require Cognizant to undertake a new course of defense.").  Moreover,

the Second Circuit has held that "Title VII's anti-discrimination and anti-retaliation provisions

'are not coterminous'; anti-retaliation protection is broader and 'extends beyond workplace-

related or employment-related retaliatory acts and harm.'"  *Hicks v. Baines*, 593 F.3d 159, 165

(2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)); *see also id.* at 164 (finding that "[a]ll of plaintiffs' retaliation claims," including those brought under Section 1981, "are analyzed pursuant to Title VII principles").  To defend against a claim of retaliation, a defendant must preserve evidence about all potential plaintiffs' protected activities, and, as Franchitti himself argues here, retaliatory acts can occur long after a plaintiff is employed by the defendant.  *See* Pl.'s Opp'n 7-11.  Accordingly, *American Pipe* tolling does not salvage Franchitti's concededly untimely Section 1981 retaliation claim.

Franchitti argues in the alternative that "Cognizant should be equitably estopped from claiming that [his] Section 1981 retaliation claim [based on his termination] is time-barred . . . because it had led [him] to believe the [p]arties had reached an agreement to settle this claim, delayed in finalizing the settlement, and then revoked its agreement to settle in bad faith after the limitations deadline."  Pl.'s Opp'n 21.  Equitable estoppel may indeed be available where a "defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit until after the statute [of limitations] has run." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985).  For equitable estoppel to apply, however, a plaintiff must allege either some "affirmative acts of fraud, misrepresentations or deception" or "egregious wrongdoing on the part of the defendant."  *City of New York v. FedEx Ground Package Sys., Inc.*, 351 F. Supp. 3d 456, 488 (S.D.N.Y. 2018) (internal quotation marks omitted); *see also, e.g.*, *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 446-47 (S.D.N.Y. 2014) (finding that where allegations "fail to specify the content of the misrepresentations that were made, the timing of the misrepresentations, [and] how the plaintiffs reasonably relied on the misrepresentations," they were "insufficient as a matter of law to establish an equitable estoppel defense to the prima facie showing that the claims are barred by

the statute of limitations"), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (summary order).  Franchitti

fails to do either.  Instead, the Complaint alleges that Franchitti rejected Cognizant's proposed

settlement agreement because it would have required him to release all his claims against

Cognizant, including the claims alleged in his *qui tam* action.  Compl. ¶ 45.  Franchitti does not

plausibly allege that Cognizant acted in bad faith or that it made any affirmative

misrepresentations.  These allegations are insufficient to establish equitable estoppel.  Thus,

Franchitti's Section 1981 retaliation claim based on his termination must be and is dismissed.

### 2.  Title VII and NYSHRL Claims

Next, Cognizant argues that Franchitti's termination-based retaliation claim under Title

VII should be dismissed based on a failure to exhaust administrative remedies and that both

claims under Title VII and the NYSHRL should be dismissed as untimely.  Def.'s Mem. 14-19.

With respect to the former argument, "[i]t is well established that Title VII requires a plaintiff to

exhaust administrative remedies before filing suit in federal court."  *Fowlkes v. Ironworkers Loc.

40*, 790 F.3d 378, 384 (2d Cir. 2015).  Specifically, "[a]s a precondition to filing a Title VII

claim in federal court, a plaintiff must . . . file a timely complaint with the EEOC."  *Hardaway v.

Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018).  "As a general rule, however,

Title VII's administrative prerequisites must be interpreted liberally to effectuate its purpose of

eradicating employment discrimination."  *Cronas v. Willis Grp. Holdings Ltd.*, No. 06-CV-

15295 (GEL), 2007 WL 2739769, at *2 (S.D.N.Y. Sept. 17, 2007).  In particular, "precise

pleading is not required for Title VII exhaustion purposes."  *Deravin v. Kerik*, 335 F.3d 195, 202

(2d Cir. 2003).  Instead, a claim is considered raised as long as it is "reasonably related to those

that were filed with the [EEOC]."  *Id.* at 200.  "A claim is considered reasonably related if the

conduct complained of would fall within the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge that was made." *Id.*; *accord Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2020).  The focus of the relevant inquiry is "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201 (cleaned up).

Here, there is no dispute that Franchitti timely filed a charge with the EEOC on October 7, 2016.  Compl. ¶ 41; EEOC Charge 6.  Nevertheless, Cognizant argues that he failed to exhaust his administrative remedies because, "in his EEOC charge, Franchitti alleged that Cognizant terminated his employment in retaliation for complaining about *age discrimination*," while his Complaint alleges "that he was terminated because he complained that Cognizant was 'replacing non-South Asians in the U.S. with South Asians.'" Def.'s Mem. 16-17.  Based on the factual allegations in the EEOC Charge, Cognizant argues, it could not "have anticipated that Franchitti would later allege that he was retaliated against for complaining of *national origin discrimination*, not age discrimination." *Id.* at 18.  That argument is wholly without merit.  Indeed, a quick review of the Complaint and the EEOC Charge reveals that "the EEOC charge alleges facts from which a reader can infer a link between protected activity . . . and a subsequent adverse employment activity." *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 443, 448 (E.D.N.Y. 2018).  For example, in the very first paragraph of the EEOC Charge, Franchitti states: "I bring this charge on behalf of myself and on behalf of all *other non-Indian born Cognizant . . . employees* who are over 40 and based in the United States who . . . like myself, have been subjected to discrimination and/or retaliation due to their age *and/or national origin*." EEOC Charge 6 (emphases added); *see also id.* at 7 (alleging that he complained to his supervisor that "[t]he national origin of myself and others ha[d] been improperly considered when it comes to employment decisions").  In addition, the scope of the EEOC investigation

clearly encompassed the claim that Cognizant had unlawfully retaliated for complaining about national origin discrimination.  In its Letter of Determination, for example, the EEOC concluded that "[c]redible evidence supports [Franchitti's] contention that he was discharged in retaliation for his complaints regarding national origin discrimination."  Compl. ¶ 43; EEOC Determination 1.  Accordingly, Franchitti properly exhausted his administrative remedies for his claim that Cognizant retaliated against him for complaining about discrimination on the basis of race or national origin.

In light of that conclusion, there is also no merit to Cognizant's argument that Franchitti's termination-based retaliation claims under Title VII and the NYSHRL should be dismissed as untimely.  To bring a timely Title VII claim, a plaintiff in New York must file a charge "with the EEOC within 300 days after an alleged unlawful employment practice occurred," *Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017) (summary order) (internal quotation marks omitted), and then file a claim in a federal district court "within ninety days of receipt of a right-to-sue letter," *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 23 (2d Cir. 2016) (summary order); *see also* 42 U.S.C. § 2000e-5(f)(1).  Here, the EEOC issued a Notice of Right to Sue on October 26, 2020.  EEOC Right to Sue.  Due to a "clerical error by the EEOC," however, Franchitti did not receive the notice until November 16, 2020, Compl. ¶ 48 n.1, so Franchitti had until February 16, 2021, to file suit.  Cognizant argues that he did not file his complaint until March 12, 2021, *see* Def.'s Mem. 15, but, as described above, Franchitti actually filed the complaint, with his motion to seal, on February 16, 2021, No. 21-MC-193 (RA), ECF No. 1-5.  Because "[a] complaint is deemed filed when the Clerk of Court receives it," *Kalican v. Dzurenda*, 583 F. App'x 21, 23 (2d Cir. 2014) (summary order); *Rosenberg v. Martin*, 478 F.2d 520, 522 n.1a (2d Cir. 1973), the filing was timely.  The fact that the Court's rules and internal

operating procedures prevented Franchitti from opening a new civil case until after the February 16, 2021 deadline does not affect that conclusion.  *See, e.g., Toliver v. Sullivan Cty.*, 841 F.2d 41, 42 (2d Cir. 1988) (holding that "the action should be treated as timely, provided the complaint was received by the clerk's office prior to the expiration of the limitations period," where the complaint was not docketed for nearly a month while the court considered the plaintiff's *in forma pauperis* motion).

The Court's conclusion about Franchitti's exhaustion of administrative remedies also dooms Cognizant's argument that his termination-based retaliation claim under the NYSHRL should be dismissed as untimely.  That is because the three-year statute of limitations for NYSHRL claims was tolled for the period in which Franchitti's EEOC charge was pending.  To be sure, as Cognizant notes, "[t]he Second Circuit has yet to definitively determine whether filing a charge with the EEOC automatically tolls the statute of limitations for NYSHRL claims." Def.'s Mem. 18-19.  But the overwhelming weight of authority within the Circuit holds that the filing of a charge with the EEOC tolls the statute of limitations for any related claims under the NYSHRL.  *Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010 (NSR), 2019 WL 294309, at *3-4 (S.D.N.Y. Jan. 23, 2019) (collecting cases); *see also, e.g., Akhtar v. Saudia*, No. 19-CV-03763 (LTS) (DCF), 2021 WL 1758807, at *9 (S.D.N.Y. May 4, 2021).  Notably, Cognizant does not really argue otherwise, asserting only that "[b]ecause Franchitti did not exhaust a claim that he was terminated for complaining of national origin discrimination, his NYSHRL claim based on th[o]se allegations was not tolled and is therefore untimely."  Def.'s Reply 4.  The Court has already rejected this argument.  It follows that Franchitti's termination-based retaliation claim under the NYSHRL is timely and, thus, may proceed.

**B.  Franchitti's Retaliation Claims Based on Cognizant's Failure to Settle**

As noted, Franchitti brings a second set of retaliation claims under Section 1981, Title VII, and the NYSHRL based on the theory that Cognizant's failure to settle his discrimination claims was itself a retaliatory act.  *See* Compl. ¶¶ 62-63, 67-68, 79-80.  Specifically, Franchitti alleges that "[h]e had settlement of this discrimination action revoked for challenging Cognizant's discriminatory visa practices, thereby causing him to pay attorney fees, costs, and endure the additional trauma of reliving his Cognizant employment."  Compl. ¶¶ 62, 67, 79; *see also* Pl.'s Opp'n 7.  Significantly, however, it is Franchitti's well-pleaded factual allegations, not his characterizations of those allegations, let alone his legal conclusions, that control.  *See Iqbal*, 556 U.S. at 678; *accord Hamilton v. Westchester Cty.*, 3 F.4th 86, 90-91 (2d Cir. 2021).  And given the allegations in the Complaint, it is simply inaccurate to assert, as Franchitti does, that Cognizant "revoked" a settlement.  Instead, the allegations in the Complaint make plain that the parties never actually reached a settlement because they failed to agree on a material term — due to Franchitti's refusal (or inability, as the case may be) to certify that he had no other pending claims against Cognizant given the *qui tam* case that he had filed.  Compl. ¶¶ 22-24, 45-47; *cf. Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997) (discussing the factors to be considered by a court in deciding whether parties intended to be bound by an oral settlement agreement in the absence of a document executed by both sides, including "whether all of the terms of the alleged contract have been agreed upon").

In any event, assuming for the sake of argument that Cognizant withdrew its settlement offer, that does not constitute an adverse employment action that could support a retaliation claim under Section 1981, Title VII, or the NYSHRL.  It is true, as Franchitti notes, that "[t]he scope of the antiretaliation provision [in Title VII] extends beyond workplace-related or

employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67.  Moreover, "in certain instances," the anti-retaliation statutes "protect against post-employment retaliation." *Mira v. Kingston*, 218 F. Supp. 3d 229, 235-36 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) (summary order).  *But see Jian Zhong Li v. Oliver King Enters, Inc.*, No. 14-CV-9293 (VEC), 2015 WL 4643145, at *3-4 (S.D.N.Y. Aug. 4, 2015) ("Plaintiff has not cited a single post-employment retaliation case from this Circuit or elsewhere that did not involve either employment-related harm or a threatened legal claim against the plaintiff, and the Court has found none.").  But, as Franchitti himself concedes, *see* Pl.'s Opp'n 7-8, to qualify as adverse, an employment action must be "material" in that it would "dissuade[]" a reasonable worker from making or supporting a charge of discrimination, *Cunningham v. N.Y. State Dep't of Lab.*, 326 F. App'x 617, 619, 621 (2d Cir. 2009) (summary order).

Cognizant's withdrawal of its settlement offer, such as it was, does not rise to that level. Franchitti was not entitled to settlement of his claims.  And while he was well within his rights to reject Cognizant's proposed settlement terms, it cannot be, as a matter of law, that Cognizant's failure to acquiesce to terms preferable to Franchitti constitutes post-employment retaliation. *See, e.g.*, *Sicher v. Merrill Lynch*, No. 09-CV-1825 (JBG), 2011 WL 892746, at *3 (N.D. Ill. Mar. 9, 2011) ("[Defendant's] withdrawal of a settlement offer does not constitute an adverse employment action."); *Barriera v. Bankers Tr.*, No. 98-CV-3641 (MBM), 2003 WL 22387099, at *8 (S.D.N.Y. Oct. 20, 2003) (finding that the plaintiff had not alleged an adverse employment action where she "admit[ted] that she did not accept the severance package that [the defendant] offered"); *see also, e.g.*, *E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 502 (6th Cir. 2006) ("[Defendant's] refusal to pay [the plaintiff] severance pay that she was otherwise not due or promised when she did not sign the Separation Agreement left her in the same position that she

had been in before the offer . . . .  As such, [she] was not adversely affected, and on these facts

the denial of severance pay was not an adverse action for the purposes of the retaliation

analysis."); *cf. Bernstein v. St. Paul Cos., Inc.*, 134 F. Supp. 2d 730, 733-34, 741 (D. Md. 2001)

(holding that a jury could find retaliation where an employee had been *unconditionally* promised

a certain amount of severance pay but was then told he could only receive the pay if he withdrew

his EEOC charge and released the employer from other claims, which he refused to do).

In short, Franchitti's settlement-based retaliation claims fail as a matter of law.

## CONCLUSION

For the reasons stated above, Cognizant's motion to dismiss is GRANTED in part and

DENIED in part.  More specially, all of Franchitti's claims except for his termination-based

retaliation claims under Title VII and the NYSHRL are dismissed.  Cognizant shall answer the

remaining claims within fourteen days of the date of this Opinion and Order.  *See* Fed. R. Civ. P.

12(a)(4)(A).  Additionally, all parties shall appear for an initial pretrial conference with the Court

on **August 9, 2022**, at **2:00 p.m.**  The conference will be held remotely by telephone in

accordance with Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, available

at https://nysd.uscourts.gov/hon-jesse-m-furman.  The parties should join the conference by

calling the Court's dedicated conference line at (888) 363-4749 and using access code 542-1540,

followed by the pound (#) key.  Counsel should review and comply with the rules regarding

teleconferences in the Court's Individual Rules and Practices in Civil Cases, including Rule

2(B)(i), which requires the parties, **no later than 24 hours before the conference**, to send a

joint email to the Court with a list of counsel who may speak during the teleconference and the

telephone numbers from which counsel expect to join the call.

One housekeeping matter remains.  The Court temporarily granted the parties' requests to file certain materials in redacted form, indicating that it would decide whether to do so permanently when deciding Defendant's motion.  *See* ECF Nos. 41, 54.  Given that the Court — of necessity — discussed much of the relevant information in this Opinion and Order, the Court is skeptical that there is any basis to keep the materials under seal consistent with the presumption in favor of public access to judicial documents.  That said, if either party believes that there is a basis to maintain any of the redactions, it shall file a letter motion, not to exceed five pages, no later than **two weeks from the date of this Opinion and Order** addressing the propriety of doing so.  In the absence of such a letter, the Court will direct the Clerk of Court to unseal the filings that have been temporarily sealed.  *See* ECF Nos. 37, 46, 50, 58, 62.

The Clerk of Court is directed to terminate ECF No. 51.

SO ORDERED.

Dated: July 8, 2022
      New York, New York

_____
JESSE M. FURMAN
United States District Judge