UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                 :

JEAN-CLAUDE FRANCHITTI,             :

                 Plaintiff,       :           21-CV-2174 (JMF)

                                   :

       -v-                      :           <u>ORDER</u>

                                   :

COGNIZANT TECHNOLOGY SOLUTIONS   :
CORPORATION et al,            :

                                   :

            Defendants.      :

                                 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Attached to this Order are the following:

- Exhibit 1, which is the juror questionnaire that the Court used during oral voir dire on March 23, 2026;

- Exhibit 2, which is the draft jury charge considered at the charge conference held on March 26, 2026; and

- Exhibit 3, which contains the final jury instructions that were delivered following summations on March 27, 2026.

SO ORDERED.

Dated: March 27, 2026
       New York, New York                         JESSE M. FURMAN
                                           United States District Judge

**COURT EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

                      :

JEAN-CLAUDE FRANCHITTI,                    :

                      :

         Plaintiff,           :

                      :         21-CV-2174 (JMF)

      -v-                :

                      :

COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION  :      VOIR DIRE
et al.,                      :

                      :

         Defendants.        :

                      :

------------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

**<u>PLEASE DO NOT READ FURTHER OR WRITE ANYTHING ON</u>**

**<u>THIS QUESTIONNAIRE UNTIL THE JUDGE TELLS YOU TO DO SO</u>**

1

When directed to do so, please indicate if your answer to any of the following questions is "**yes**" by circling the number of that question.  If your answer to a question is "**no**," you should not do anything.  Do *not* write your name or make *any other* marks on the questionnaire; the only marks you should make are circles around the questions for which your answer is "yes."  If, when asked about a "yes" answer, you prefer not to elaborate in open court, please say so.

A.      General Questions

     1.      As I noted, this trial could last up to a week and a half.  Do you have any unmovable commitments or extraordinary personal hardships that would interfere with your serving as a juror at a trial that is expected to end no later than Wednesday, April 1, 2026?

     2.      Do you have any difficulty understanding or reading English?

     3.      Do you have any ideas or prejudices that would make it difficult for you to follow my instructions as to the law?

     4.      Do you have any doubt that you will be able to apply the law as I explain it even if you disagree with it?

     5.      Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or entity?

     6.      Have you, or has any close friend or relative of yours, ever studied or practiced law or worked in any capacity for a law office or a court?

B.      Case-Specific Questions

     7.      Do you have any personal knowledge of this case?

     8.      Have you heard or read anything about the claims in this case as I have described them?

     9.      Have you, or has any close friend or relative of yours, ever worked in or received training or education in computer science or information technology?

     10.     Have you, or has any close friend or relative of yours, ever worked in or received training or education in employment law, human resources, or personnel management?

     11.     Have you, or has any close friend or relative of yours, ever been involved in handling employee complaints of discrimination?

2

12.     Have you ever been involved in hiring, firing, managing, or disciplining employees?

13.     Do you currently or have you ever owned your own business?

14.     Have you, or has any close friend or relative of yours, ever been involved in a dispute over job performance?

15.     Have you, or has any close friend or relative of yours, ever witnessed or experienced discrimination or retaliation at work?

16.     Have you, or has any close friend or relative of yours, ever filed a formal complaint or been involved in a lawsuit against an employer?

17.     Have you, or has any close friend or relative of yours, ever been demoted or terminated (i.e., fired, discharged, or laid off) from a job?

18.     Have you, or has any close friend or relative of yours, ever been a member of any group that is concerned with employment issues or civil lawsuits?

19.     Have you ever been accused of discriminating against another person?

20.     Have you ever worked, or applied to work, in another country?

21.     I expect there to be evidence that some of Cognizant's employees are workers from other countries with visas known as "H-1B visas." Do you have any experiences or knowledge about H-1B visas or visas generally, or any opinions or feelings about whether American companies should use, or be allowed to use, H-1B visas or visas generally to hire workers from other countries that would interfere with your ability to be fair and impartial in this case?

22.     The Defendants in this case are corporations. Corporations are entitled to be treated the same as an individual person before the law. Do you have any reason to believe that you would not be able to treat each party, whether an entity or an individual, fairly?

23.     You may hear testimony from expert witnesses. Have you had any experiences with expert witnesses, or do you have any general feelings about the use of expert witnesses, that would affect your ability to be fair and impartial in this case?

24.     Do you have any reason to think that you could *not* sit fairly and impartially as a juror in this case?

3

B.      Knowledge of Parties, Lawyers, and Witnesses

25.     The Plaintiff, Jean-Claude Franchitti, is represented by attorneys Daniel Kotchen, Lindsey Grunert, and Amanda Burns of the law firm Kotchen & Low LLP.  Do you know, or have you had any personal or business dealings with, any of these lawyers or their law firm?

26.     Jared Barcenas will be present as a representative of the Defendants, Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation.  They are represented by attorneys A. Klair Fitzpatrick, Hanna Martin, Celina Antonellis, and John C. Dodds of the law firm Morgan, Lewis & Bockius LLP.  Defendants' attorneys will be assisted during trial by Sydney Farnham, Andrew Klein, William Wenzel, and Kristin Veltry.  Do you know, or have you had any personal or business dealings with, any of these lawyers and support staff or their law firm?

27.     Have you, or has your employer or anyone close to you, ever had any personal or business dealings with Dr. Franchitti, the Cognizant Defendants, or Cognizant's corporate representative, Mr. Barcenas?

28.     Do you have any knowledge, opinions, feelings, or impressions about Dr. Franchitti, the Cognizant Defendants, or Mr. Barcenas that would affect your ability to be a fair and impartial juror in this case?

29.     Dr. Franchitti is a French national, and Cognizant has a substantial presence, and does business, in India.  Would either of those facts affect your ability to be a fair and impartial juror in this case?

30.     Do you know or have you heard of any of the following people or institutions who may testify or whose names may be mentioned during the course of the trial?  (If so, circle the name.)

   a. Abigail Israel
   b. Allen Shaheen
   c. Colleen Doherty
   d. Jacob Hill
   e. John Raspen
   f. Jvonne Telfair
   g. Khushali Javeri
   h. Mark Livingston
   i. Neil Neveras
   j. Paul VanBuhler
   k. Purna Roy
   l. Rajsekavan Balasubramaniam ("Raj Bala")
   m. Richard Turner
   n. Seth Seigel
   o. Vartan Piroumian

31.     Are you familiar with anyone else present in the courtroom, including your fellow jurors, all Court personnel, and myself?

4

C.      <u>Experience with, and Opinions of, Lawsuits</u>

32.      If you or any member of your immediate family has ever brought a lawsuit against anyone or been sued, would that experience affect your ability to be fair and impartial in this case?

33.      Do you believe that simply because someone brings a lawsuit that must mean the person deserves to get money?

34.      In general, do you believe there should be "caps" or limits on the amount of money juries can award in lawsuits?

35.      Have you, or has any member of your immediate family, ever appeared as a witness either at a trial or in a grand jury investigation?

D.      <u>Difficulties in Understanding or Serving</u>

36.      Do you have any problem with your hearing or vision, or any physical or medical issues (including any medication you may be taking), that would prevent you from giving your full attention to all of the evidence presented during this trial?

37.      In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror. Apart from any prior question I have asked you, is there *any* reason that you could *not* be a conscientious, fair, and impartial juror in this case, and render a true and just verdict without fear, favor, sympathy, or prejudice, according to the law as I will explain it to you?

5

**QUESTIONS FOR INDIVIDUAL JURORS**

1.    Please state your name.

2.    In which county or counties have you lived during the past five years?

3.    How old are you?

4.    How far did you go in school?

5.    What do you do?  (If retired or unemployed, describe your last employment).

6.    How long have you been employed in your current position?  (If fewer than five years, where else did you work in the last five years?)

7.    Do you live with anyone and, if so, what do they do?

8.    Do you have grown children?  What do they do?

9.    Where do you typically get your news?  For example, what print newspapers, magazines, television shows, radio shows, podcasts, internet news site(s), or apps do you read, watch, or listen to on a regular basis?

10.    Do you belong to or volunteer your time to any associations, organizations, clubs, or unions?

11.    What do you like to do in your spare time?

12.    Have you ever served as a juror?  If so, when did you serve and was it a civil or criminal case? Were you the foreperson?  Did you reach a verdict?  (**Do not tell us what the verdict was**.)

**COURT EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

JEAN-CLAUDE FRANCHITTI,               :

                           Plaintiff,          :

        -v-                    :

                                   :       21-CV-2174 (JMF)

COGNIZANT TECHNOLOGY SOLUTIONS  :
CORPORATION et al.,           :

                         Defendants.      :

------------------------------------------------------------------------X

# <mark>DRAFT</mark> JURY CHARGE

March 26, 2026

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ................................................................. 1

Role of the Court and the Jury ......................................................................... 2
The Parties ....................................................................................................... 2
Conduct of Counsel ......................................................................................... 2
Direct and Circumstantial Evidence ................................................................ 3
What Is and What Is Not Evidence .................................................................. 4
Charts and Summaries ..................................................................................... 5
Demonstratives ................................................................................................ 6
Depositions ...................................................................................................... 6
Limited Purpose Evidence ............................................................................... 7
Credibility of Witnesses .................................................................................. 7
Prior Inconsistent Statements ......................................................................... 8
Knowledge and Conduct of Corporate Employees .......................................... 9
Expert Witnesses ............................................................................................. 9
All Available Evidence Need Not Be Presented ............................................... 11
Preponderance of the Evidence ....................................................................... 11

II. SUBSTANTIVE ISSUES .................................................................................... 12

Retaliation Elements ....................................................................................... 12
First Element: Protected Activity .................................................................... 13
Second Element: Defendants' Knowledge ....................................................... 14
Third Element: Materially Adverse Employment Action ................................. 15
Fourth Element: Causal Link ........................................................................... 15
Damages Generally .......................................................................................... 16
Compensatory Damages .................................................................................. 17
Nominal Damages ........................................................................................... 20
Punitive Damages ............................................................................................ 21

III. CONCLUDING INSTRUCTIONS ...................................................................... 23

Selection of Foreperson ................................................................................... 23
Sending Notes .................................................................................................. 23
Right to See Exhibits and Hear Testimony ...................................................... 24
Juror Note-Taking ........................................................................................... 24
Duty to Deliberate ........................................................................................... 25
Return of the Verdict ....................................................................................... 25
Closing Comments ........................................................................................... 26

# I. GENERAL INTRODUCTORY CHARGES

Members of the jury, you have now heard all of the evidence and the lawyers' closing arguments.  It is my duty at this point to instruct you as to the law.  I am going to read my instructions to you.  It is not my favorite way to communicate — and not the most scintillating thing to listen to — but there is a need for precision, and it is important that I get the words just right, and so that is why I will be reading.

I have given you a copy of my instructions to follow along because they cover many points.  Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If you find it easier to listen and understand while you are following along with me, please do so.  If you would prefer, you can just listen and not follow along.  In the unlikely event that I deviate from the written instructions, it is my oral instructions that govern and that you must follow.  But you may take your copy of the instructions with you into the jury room so you can consult it if you want to re-read any portion of the charge to facilitate your deliberations.

For now, listen carefully and try to concentrate on the substance of what I'm saying.  You should not single out any instruction as alone stating the law.  Instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

My instructions to you will be in three parts.

First, I will give you general instructions — for example, about your role as the jury, what you can and cannot consider in your deliberations, and the burden of proof.

Second, I will describe the law that you must apply to the facts as you find them to be established by the evidence.

Finally, I will give you some instructions for your deliberations.

1

Role of the Court and the Jury

You, the members of the jury, are the sole and exclusive judges of the facts. You must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party. It is your duty to accept my instructions as to the law and to apply them to the facts as you determine them. If either party has stated a legal principle differently from any that I state to you in my instructions, it is my instructions that you must follow.

The Parties

As you know, the Plaintiff in this case is Jean-Claude Franchitti, and the Defendants are Cognizant Technology Solutions Corporation and its subsidiary, Cognizant Technology Solutions U.S. Corporation, which, for simplicity, I will refer to together as "Cognizant." In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. No party is entitled to any greater or lesser consideration by you. The fact that the Defendants are corporations is irrelevant. All litigants are equal before the law and each party in this case is entitled to the same fair consideration that you would give any other party.

Conduct of Counsel

The personalities and the conduct of counsel are not in any way at issue. If you formed opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior, those opinions should not enter into your deliberations.

In addition, remember that it is the duty of a lawyer to object when the other side offers testimony or other evidence that the lawyer believes is not properly admissible. Therefore, you should draw no inference from the fact that there was an objection to any testimony or evidence.

2

Nor should you draw any inference from the fact that I sustained or overruled an objection. Simply because I have permitted certain testimony or evidence to be introduced does not mean that I have decided on its importance or significance.  That is for you to decide.

Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict.  The first type is direct evidence.  Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed through the five senses.  The second type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day outside.  Also assume that the courtroom shades were drawn and you could not look outside.  Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact.  The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might

3

reasonably draw from other facts that have been proved. It is for you, and you alone, to decide what inferences you will draw.

Importantly, circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence. It asks only that you consider all the evidence presented.

What Is and What Is Not Evidence

What, then, is the evidence in the case?

The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received into evidence, and (3) any stipulations made by the parties.

A stipulation is an agreement between parties as to what certain facts were or what the testimony would be if certain people testified before you. A stipulation is the same for your purposes as the presentation of live testimony. You should consider the weight to be given such evidence just as you would any other evidence.

Nothing else is evidence.

For example, the questions posed to a witness are not evidence: It is the witnesses' answers that are evidence, not the questions. In addition, exhibits marked for identification but not admitted by me are not evidence; nor are materials brought forth only to refresh a witness's recollection. Moreover, testimony that has been stricken or excluded by me is not evidence and may not be considered by you in rendering your verdict.

Along these lines, you will recall that, among the exhibits received in evidence, some documents are redacted. "Redacted" means that part of the document was deleted or blacked out. As I previously told you, you are to concern yourself only with the part of the document

4

that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been deleted or blacked out.

Statements and arguments by the lawyers are also not evidence.  What you heard during the opening statements and summations is merely intended to help you understand the evidence and reach your verdict.  If your recollection of the facts differs from the lawyers' statements, you should rely on your recollection.  If a lawyer made a statement during his or her opening or summation and you find that there is no evidence to support the statement, you should disregard the statement.

Finally, any statements that I may have made during the trial or during these instructions do not constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. The rulings I have made during the trial and these instructions are no indication of my views as to what your decision should be.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

Charts and Summaries

The exhibits include certain charts and summaries.  As I mentioned to you during trial, I admitted these charts and summaries in place of, or in addition to, the underlying testimony or documents that they purport to represent, in order to save time and avoid unnecessary

inconvenience. They are no better than the testimony or the documents upon which they are based. Therefore, you are to give no greater consideration to these charts or summaries than you would give to the evidence upon which they are based. It is for you to decide whether they correctly present the information contained in the testimony and in the exhibits on which they were based.

Demonstratives

During trial, the parties showed you what are called "demonstratives" — illustrations or reproductions of what the parties consider relevant information in this case. As I previously explained, demonstratives are not evidence. Instead, they were shown to you in order to make other evidence more meaningful and to aid you in considering the evidence. They are no better than the evidence upon which they are based. Therefore, you are to give no greater consideration to these demonstratives than you would give to the evidence upon which they are based.

It is for you to decide whether the demonstratives correctly present the information contained in the evidence on which they were based. You may consider the demonstratives if you find that they are of assistance to you in analyzing and understanding the evidence.

Depositions

Some of the testimony before you is in the form of a deposition that was received in evidence. As I previously explained, a deposition is simply a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

6

Limited Purpose Evidence

If certain testimony or evidence was admitted or received for a limited purpose, you must follow the limiting instructions I have given.

Credibility of Witnesses

How do you evaluate the credibility or believability of the witnesses? The answer is that you use your common sense. There is no magic formula by which you can evaluate testimony. You may use the same tests here that you use in your everyday life when evaluating statements made by others to you. You may ask yourselves: Did the witness impress you as open, honest, and candid? How responsive was the witness to the questions asked on direct examination and on cross-examination?

If you find that a witness intentionally told a falsehood, that is always a matter of importance you should weigh carefully. On the other hand, a witness may be inaccurate, contradictory, or even untruthful in some respects and entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all of the testimony of any witness, or to accept or reject only portions.

You are not required to accept testimony even though the testimony is uncontradicted and the witness's testimony is not challenged. You may reject it because of the witness's bearing or demeanor, because of the inherent improbability of the testimony, or for any other reasons sufficient for you to conclude that the testimony is not worthy of belief.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such an interest in the

7

outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, you should bear that factor in mind when evaluating the credibility of his or her testimony and decide whether to accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Prior Inconsistent Statements

You have heard evidence that, at some earlier time, a witness may have said something that one or the other party argued was inconsistent with the witness's testimony at trial.

Such prior statements are not themselves evidence; instead, they were presented to you for the purpose of helping you decide whether to believe the witness's testimony at trial. If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency and, if so, whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent and, if so, how much weight, if any, to give to the inconsistent statement in determining whether to believe all, or part of, the witness's trial testimony.

Knowledge and Conduct of Corporate Employees

A company can act only through its employees. Consequently, when you are considering the substantive rules of law about which I will instruct you, you should understand that a company is generally responsible for the conduct and knowledge of its employees who are acting in the course of, and within the scope of, their duties as employees for the company.

That also means that a company can "know" things only through its employees. As a general matter, the knowledge of an individual employee is "imputed" or attributed to his or her employer if the employee acquired the knowledge when he or she was acting within the scope of his or her employment and authority. That is true even if the employee did not formally communicate the information to his or her employer.

An employee is acting within the scope of his or her employment and authority if (1) he or she is engaged in the transaction of business that has been assigned to him or her by his or her employer or (2) he or she is doing anything that may reasonably be said to have been contemplated as part of his or her employment. It is not necessary that an act or failure to act was expressly authorized by the employer.

Expert Witnesses

During the trial, you heard testimony from an expert witness: Richard Turner. As I told you, an expert witness is someone who, by education or experience, has acquired learning or

9

experience in a specialized area of knowledge.  Such a witness is permitted to express his opinions on matters about which he has specialized knowledge and training.  A party may present expert testimony to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

The opinions stated by Mr. Turner were based on particular facts as he himself observed them and testified to them before you, or as he was told by somebody else or as appeared to him from some record or other material.  You may reject an expert witness's opinion if you find, from the evidence in this case, that the underlying facts are different from those that formed the basis of the expert's opinion.  You may also reject an expert's opinion if, after careful consideration of all the evidence in the case, including expert and other testimony, you disagree with that opinion.  In other words, you are not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other evidence.  Such an opinion is subject to the same rules concerning reliability as the testimony of any other witness, and it is allowed only to aid you in reaching a proper conclusion.

In weighing an expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as well as all of the other considerations that ordinarily apply, including all the other evidence in the case.  You may give expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept a witness's testimony merely because he qualifies as an expert.  Nor should you substitute an expert's opinion for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

10

All Available Evidence Need Not Be Presented

The law does not require any party to call as witnesses — whether fact or expert witnesses — all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters at issue in this trial.  Nor does the law require any party to produce or present as exhibits all papers and things mentioned in the evidence in the case.

You are not to rest your decision on what some absent witness who was not brought in might or might not have testified to.  Each party had an equal opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what an absent witness would have testified to had he or she been called.  The absence of a witness should not affect your judgment in any way.

Preponderance of the Evidence

Before I instruct you on the issues you must decide, I want to define for you the standard under which you will decide whether a party has met its burden of proof on a particular issue.  The standard that applies in this case is the preponderance of the evidence.  As I told you at the beginning of the trial, proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial, does not apply to a civil case such as this and you should put it out of your mind.

To establish something by a preponderance of the evidence means that the evidence of the party that has the burden of proof must be more convincing and persuasive to you than that opposed to it.  The difference in persuasiveness need not be great: So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof — that what the party claims is more likely true than not — then that element will have been proved by a preponderance of the evidence.  And here it is important for you to realize that this refers to the

11

quality of the evidence and not to the number of witnesses, the number or variety of the exhibits, or the length of time spent on a subject.  In determining whether any fact has been proved by a preponderance of the evidence, you may consider all of the exhibits and the testimony of all of the witnesses.

## II. SUBSTANTIVE ISSUES

That completes my introductory instructions.  Let me turn, then, to the law that applies to the issues in this case.  As you know, Dr. Franchitti is a former employee of Cognizant.  He brings claims for termination-based retaliation under two different laws: Title VII of the Civil Rights Act of 1964, which is a federal law, and the New York State Human Rights Law, which is (as it sounds) a New York law.  The standards for unlawful retaliation are largely the same under the federal law and the state law, so I will discuss the claims together.

**Adapted from _Tang v. Glocap Search LLC_, 14-CV-1108 (JMF); _Edelman v. NYU Langone Health Sys._, 141 F.4th 28, 45 & n.9 (2d Cir. 2025); _see Fischman v. Mitsubishi Chem. Holdings Am., Inc._, No. 18-CV-8188 (JMF), 2023 WL 4763257, at \*9 & n.5 (S.D.N.Y. July 26, 2023) (noting that the 2019 amendments to the NYSHRL are not retroactive).**

Retaliation Elements

To prevail on his retaliation claims, Dr. Franchitti must show by a preponderance of the evidence the following four elements:

First, that he engaged in "protected activity" — that is, an activity that is protected by the anti-discrimination laws that are at issue here;

Second, that the Defendant was aware of the Plaintiff's participation in the protected activity prior to taking some adverse employment action;

Third, that the Defendant took a materially adverse employment action against him; and

Fourth, that the Defendant took the materially adverse employment action against him because of the protected activity.

If you find that Dr. Franchitti has failed to prove any of these elements, then you must find for the Defendants.

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF).**

First Element: Protected Activity

A plaintiff engages in a protected activity when he complains about what he reasonably and in good faith believes to be unlawful, discriminatory employment practices. A formal or informal complaint to management can constitute protected activity.

To satisfy this element, Dr. Franchitti must show, by a preponderance of the evidence, that he complained about race or national origin discrimination. Dr. Franchitti need not establish that his claims of discrimination were valid. Instead, he must show, by a preponderance of the evidence, only that he had a good faith, objectively reasonable belief when he complained of his employer's actions that those actions violated the anti-discrimination laws, specifically that they were discriminatory on the basis of race or national origin.

As I explained to you earlier in the trial, Dr. Franchitti has not alleged in this case that Cognizant retaliated against him for complaining of *age* discrimination. Thus, although you heard evidence that Dr. Franchitti raised concerns about age discrimination, if you find that Dr. Franchitti complained *only* of age discrimination, and not of race or national origin discrimination, you must conclude that Dr. Franchitti did not engage in protected activity.

13

Likewise, raising concerns that Cognizant engaged in visa fraud or otherwise violated immigration laws does not in itself constitute protected activity.  Accordingly, you may not find that Dr. Franchitti engaged in protected activity because he complained about Cognizant's visa practices alone.  You may consider such evidence when deciding whether Dr. Franchitti complained of race or national origin discrimination.  For example, if you find that Dr. Franchitti complained that Cognizant's visa practices were used a mechanism for discrimination on the basis of race or national origin, such a complaint would constitute protected activity.  You may not, however, find that Dr. Franchitti engaged in protected activity solely because he complained about Cognizant's visa practices.

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013); *Swiderski v. Urb. Outfitters, Inc.*, No. 14-CV-6307 (JPO), 2017 WL 6502221, at \*11 (S.D.N.Y. Dec. 18, 2017).**

Second Element: Defendants' Knowledge

The second element Dr. Franchitti must prove is that Cognizant was aware of his participation in the protected activity prior to taking some adverse employment action.  Dr. Franchitti satisfies that element if he shows by a preponderance of the evidence that Cognizant was aware of his protected activity prior to terminating his employment.

Dr. Franchitti need not prove that any particular person within Cognizant had the required awareness; it is sufficient that Cognizant as an entity was generally aware of his protected activity prior to terminating his employment.  To show such awareness, Dr. Franchitti must prove by a preponderance of the evidence that Cognizant understood, or could reasonably have understood, that his complaints concerned discrimination on the basis of race or national origin.

14

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF); *Cardwell v. Davis Polk & Wardwell LLP*, 19-CV-10256 (GHW); *Olaechea v. City of New York*, No. 17-CV-4797 (RA); *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 46 & nn.9-10 (2d Cir. 2025).**

Third Element: Materially Adverse Employment Action

The third element Dr. Franchitti must prove is that Cognizant took a materially adverse employment action against him.  An action qualifies as a materially adverse employment action if it could well dissuade a reasonable employee from making or supporting a charge of discrimination.  Termination of employment constitutes a materially adverse employment action.

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF).**

Fourth Element: Causal Link

Finally, to prevail on his claims, Dr. Franchitti must show that Cognizant took the materially adverse employment action against him "because of" his participation in the protected activity.  To satisfy this element, Dr. Franchitti must prove by a preponderance of the evidence that, had he not complained about race or national origin discrimination, he would not have been fired.  Close proximity in time between an employee's act and an employer's alleged retaliation can, though does not necessarily, establish a causal link between the two.

When you consider whether Dr. Franchitti has proved that he was fired "because of" retaliation, you should first decide whether you believe that Cognizant was in fact motivated by a desire to retaliate against him because of his complaints about race or national origin discrimination.  If not, you must find in favor of the Defendants.

On the other hand, if you conclude that Cognizant was motivated by a desire to retaliate, next consider whether the company also had any non-retaliatory reason or reasons to fire Dr.

Franchitti.  If you decide that there were no other motives to fire Dr. Franchitti, and that his firing was solely motivated by retaliation, then you must find for him.

If there were other, non-retaliatory motives for Cognizant to fire Dr. Franchitti, however, then you must consider this question: Would the Defendants have fired him based only on non-retaliatory reasons?  In other words, do you believe that Cognizant actually fired Dr. Franchitti only for non-retaliatory reasons or do you believe that Cognizant is relying on non-retaliatory motives to conceal the fact that it would not have fired Dr. Franchitti had he not complained of discrimination?  If you decide that Cognizant would have fired Dr. Franchitti regardless of its retaliatory intent or even if there had been no retaliatory motive at all, then you must find for the Defendants.  If, however, you conclude that Cognizant would not have fired the Plaintiff were it not for a retaliatory motive, then you must find for the Plaintiff.

The question is not whether a defendant's reasons showed poor or erroneous judgment. You are not to judge the Defendants' wisdom or general fairness.  An employer is entitled to make its decisions for good reasons, bad reasons, or no reason at all — so long as the decision is not motivated by unlawful retaliation.

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF); *Olaechea v. City of New York*, No. 17-CV-4797 (RA).**

Damages Generally

If you conclude that Dr. Franchitti has met his burden of proving liability, then you must determine the damages, if any, to which he is entitled.  You should not infer that the Plaintiff is entitled to recover damages merely because I am instructing you as to damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that they are warranted.

16

Here, Dr. Franchitti is seeking two categories of damages: "compensatory damages" and "punitive damages." I will explain each category in turn.

**Adapted from _Accent Delight International Ltd. v. Sotheby's, Inc._, No. 18-CV-9011 (JMF); _Tang v. Glocap Search LLC_, 14-CV-1108 (JMF).**

Compensatory Damages

"Compensatory damages" are designed to make a plaintiff whole — that is, to compensate a plaintiff for the injury suffered as a result of the defendant's unlawful conduct. Compensatory damages are not intended to punish a defendant and should not provide the plaintiff with more than what is required to make him whole. Any damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages based on speculation, but only for those injuries that the party bearing the burden of proof has proved according to the standards that I described to you.

Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that a plaintiff prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. Nonetheless, damages must be established with reasonable certainty. In all instances, you are to use sound discretion in fixing any award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

"Back Pay"

You may award damages for any lost wages and employee benefits that Dr. Franchitti would have received from the date he was fired to the date of your verdict, had he not been terminated for retaliatory reasons. This is known as "back pay." You must reduce any such

17

award, however, by the amount of the expenses that Dr. Franchitti would have incurred in making those earnings and by the amount of any earnings that Dr. Franchitti has received from other sources that he would not have received had he continued to work for Cognizant.

"Front Pay"

Next, if you find that Dr. Franchitti will be unable to earn in the future what he would have earned at Cognizant, then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (1) the date you believe he would have worked at Cognizant absent any retaliatory conduct or (2) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. This is known as "front pay." If you find that Dr. Franchitti is entitled to an award of front pay, you should state the total dollar amount of that award and indicate the period over which such an award is intended to compensate him. Factors to be considered in determining front pay include Dr. Franchitti's age, work history, and likelihood of finding comparable employment.

Emotional Harms

Finally, you may award damages for any pain, suffering, humiliation, or mental anguish that Dr. Franchitti experienced as a consequence of Cognizant's retaliation. There is no requirement that evidence of the monetary value of such intangible things as pain and suffering be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages and no expert testimony need be introduced. Any award you make should be fair in light of the evidence presented at the trial. In order to recover damages for mental and emotional distress, the Plaintiff must present credible evidence with respect to the claimed mental anguish and corroboration, either by competent medical proof or by the circumstances of the case. Psychiatric or other medical treatment is not a precondition to

18

recovery.  Mental and emotional distress may be proved by the Plaintiff's own testimony, corroborated by reference to the circumstances of the alleged misconduct.

Dr. Franchitti can recover only for the mental and emotional distress, if any, that he proves, by a preponderance of the evidence, was proximately caused by the retaliatory conduct by Cognizant.  A plaintiff's damages are proximately caused by a defendant's conduct if the damages are a reasonably foreseeable consequence of that conduct.  Thus, if you find that Dr. Franchitti has proved that he suffered mental or emotional distress, and that the distress was proximately caused by the retaliation, you must fix the amount of damages that will, as much as money can, fairly compensate Dr. Franchitti for his injuries.

Dr. Franchitti's Duty to Mitigate

You are also instructed that Dr. Franchitti has a duty under the law to "mitigate" his damages — that is, to exercise reasonable diligence under the circumstances to reduce or minimize his damages.  On this issue, the burden is on Cognizant, not Dr. Franchitti.

If you consider whether Dr. Franchitti fulfilled his duty to mitigate his damages, you should first decide whether Cognizant proved by a preponderance of the evidence that Dr. Franchitti made no reasonable efforts at all to find comparable employment after being terminated.  If it has, you should not award Dr. Franchitti any back pay or front pay damages.

If you conclude that Dr. Franchitti made some reasonable efforts to obtain employment after being terminated, however, you should ask yourself, as to back pay, whether Cognizant proved by a preponderance of the evidence that comparable employment was actually available and that Dr. Franchitti did not make reasonable efforts to obtain those positions.  If it did, then you should reduce any award of back pay by the amount you find that Dr. Franchitti could have earned from such employment.

19

Next, before awarding any front pay, you should consider whether Cognizant proved, by a preponderance of the evidence, that Dr. Franchitti, using reasonable care and diligence, will be able to obtain a comparable job in the future.  If it did, then you should reduce any award of front pay by the amount you find that he would earn through such other employment.

In assessing the reasonableness of Dr. Franchitti's efforts to mitigate his damages, you may consider what you have learned about Dr. Franchitti's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Dr. Franchitti to find suitable work.  In weighing the evidence, keep in mind that Dr. Franchitti is under no obligation to enter another line of work or to take a demotion or a demeaning job.

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF); *Pedraza v. Manhattan Monster Inc.*, No. 23-CV-2596 (VF); *Accent Delight International Ltd. v. Sotheby's, Inc.*, No. 18-CV-9011 (JMF); *Olaechea v. City of New York*, No. 17-CV-4797 (RA); *Arcos v. The New School University*, No. 14-CV-2678 (KFP); *Bivens v. Institute for Community Living, Inc.*, No. 14-CV-7173 (PAE); *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2023 WL 2049800, at \*37-38 (S.D.N.Y. Feb. 16, 2023); *Olaechea v. City of New York*, No. 17-CV-4797 (RA), 2022 WL 3211424, at \*9, \*11 (S.D.N.Y. Aug. 9, 2022); *Rensselaer Cnty. Sheriff's Dep't v. N.Y. State Div. of Hum. Rts.*, 85 N.Y.S.3d 235, 238 (App. Div. 3d Dep't 2018); *Broadnax v. City of New Haven*, 415 F.3d 265, 268-70 (2d Cir. 2005); *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997); *Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 882 (2d Cir. 1997).**

Nominal Damages

If you find, after considering all the evidence presented, that Dr. Franchitti has prevailed on his claims, but he either suffered no injury as a result of the Defendants' conduct or you

20

unable to compute compensatory damages except by engaging in pure speculation and guessing, you must award him "nominal damages" of $1.00. "Nominal damages" are awarded as recognition that a plaintiff's rights have been violated.

You may not award both nominal and compensatory damages to the Plaintiff; either he experienced actual damages in an amount you can calculate, in which case you must award compensatory damages, or else he did not, in which case you must award nominal damages.

**Adapted from *Tang v. Glocap Search LLC*, 14-CV-1108 (JMF).**

Punitive Damages

Aside from actual and nominal damages, you may also consider an award of punitive damages in this case. In some cases, punitive damages may be awarded for the purpose of punishing a defendant for that defendant's wrongful conduct and to deter others from engaging in similar wrongful conduct. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. It is the Plaintiff's burden to establish that punitive damages are appropriate by a preponderance of the evidence.

You may, but are not required to, award punitive damages, as long as you find that Cognizant acted with malice or reckless indifference to Dr. Franchitti's right not to be retaliated against for complaining about race and national origin discrimination, and not merely that the Defendants' actions were unreasonable. You should find that Cognizant has acted with malice or indifference if Dr. Franchitti has proved that the company knew that the termination was in violation of the law prohibiting the retaliation or acted with reckless disregard of that law — that is, with an intention to disregard what it knew was a high probability that its acts were in violation of the law. The requisite state of mind may be inferred from the circumstances.

However, you may not award punitive damages against the Defendants if they have proved that Cognizant itself made a good-faith effort to comply with the law prohibiting retaliation and that any manager or supervisor responsible for the retaliation was therefore acting in contradiction of company policy and practice.

If you find that Cognizant acted with malice or reckless disregard and did not make a good-faith effort to comply with the law, then in addition to any actual or nominal damages to which you find the plaintiff entitled, you may, but are not required to, award Dr. Franchitti an additional amount as punitive damages if you find it is appropriate to punish Defendants or to deter Defendants and others from like conduct in the future. Whether to award the Plaintiff punitive damages, and the amount of those damages, are within your discretion.

If you decide punitive damages are warranted, in arriving at your decision as to the amount of punitive damages, you should consider the nature and reprehensibility of what the Defendants did. That would include the character of the wrongdoing, such as: whether the acts were done with an improper motive or vindictiveness; whether the acts constituted outrageous or oppressive intentional misconduct; how long the conduct went on; the Defendants' awareness of what harm the conduct caused or was likely to cause; any concealment or covering up of the wrongdoing; how often the Defendants had committed similar acts of this type in the past, and the actual and potential harm created by the Defendants' conduct.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by Dr. Franchitti and to the compensatory damages you awarded. The reprehensibility of the Defendants' conduct is an important factor in deciding the amount of punitive damages to award that would be reasonable and proportionate.

22

You may also consider the Defendants' financial condition and the impact any punitive damages award would have on the Defendants.

**Adapted from _Tang v. Glocap Search LLC_, 14-CV-1108 (JMF); _Accent Delight International Ltd. v. Sotheby's, Inc._, No. 18-CV-9011 (JMF); _Kerr v. Physician Affiliate Group of New York P.C._, No. 17-CV-1777 (VEC); _Edelman v. NYU Langone Health Sys._, 141 F.4th 28, 43 (2d Cir. 2025).**

## III. CONCLUDING INSTRUCTIONS

<u>Selection of Foreperson</u>

In a few minutes, you are going to go into the jury room and begin your deliberations. Your first task will be to select a foreperson. The foreperson has no greater voice or authority than any other juror, but is the person who will communicate with me when questions arise and when you have reached a verdict. The foreperson is also who will be asked in open court to pass your completed Verdict Form to me.

<u>Sending Notes</u>

You may have questions or comments for me as you deliberate. If you do, you can communicate with me by sending notes using forms and envelopes that you will be provided for that purpose. Your notes to me should be signed by the foreperson and should include the date and time they were sent. They should also be as clear and as precise as possible, as they will become part of the record in this case. Do not tell me or anyone else how you stand on any issue until after a unanimous verdict is reached.

Right to See Exhibits and Hear Testimony

All of the exhibits will be given to you near the start of deliberations.  Most of it will be provided to you on a laptop.  In addition, you will also be provided with a list of all the exhibits that were received into evidence.

If you prefer to view any evidence here in the courtroom or if you want any of the testimony submitted to you or read back to you, you may also request that.  Keep in mind that if you ask for testimony, however, the court reporter must search through his or her notes, the parties must agree on what portions of testimony may be called for, and if they disagree I must resolve those disagreements.  That can be a time-consuming process.  So please try to be as specific as you possibly can in requesting portions of the testimony, if you do.

Again, your requests for testimony — in fact, any communication with the Court — should be made to me in writing, signed by your foreperson with the date and time, and given to one of the Court Security Officers.

Juror Note-Taking

If any one of you took notes during the course of the trial, you should not show your notes to, or discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.  Finally, your notes are not to substitute for your recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of the testimony, you may — as I just told you — request that the official trial transcript that has been made of these proceedings be submitted or read back to you.

<u>Duty to Deliberate</u>

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact. I know you will try the issues that have been presented to you according to the oath that you have taken as jurors. In that oath, you promised that you would well and truly try the issues joined in this case and a true verdict render.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold the center stage in the jury room, and no one juror should control or monopolize the deliberations. If, after listening to your fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

Your verdict must be unanimous. If at any time you are not in agreement, you are instructed that you are not to reveal the standing of the jurors — that is, the split of the vote — to anyone, including me, at any time during your deliberations.

<u>Return of the Verdict</u>

We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is attached to these instructions. Do not write on your individual copies of the Verdict Form. My staff will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the foreperson has been selected.

As you will see, the Verdict Form is kind of like those old "choose your own adventure" books. Depending on your answer to a question or questions, you will be directed to either answer another question or to sign the Verdict Form. You should draw no inference from the

25

questions on the Verdict Form as to what your verdict should be. The questions are not to be taken as any indication that I have any opinion as to how they should be answered.

When you have completed the Verdict Form, please review your answers to ensure that they accurately reflect your unanimous determinations. If they do, the foreperson should note the date and time and you should all sign the Verdict Form. The foreperson should then give a note — **not** the Verdict Form itself — to the Court Security Officer outside your door, stating that you have reached a verdict. Do not specify what the verdict is in your note. Instead, the foreperson should retain the Verdict Form and hand it to me in open court when I ask for it.

I will stress again that **all** of you must be in agreement with the verdict that is announced in court. Once your verdict is announced in open court and officially recorded, it cannot ordinarily be revoked.

Closing Comments

Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse to say it: You should treat each other with courtesy and respect during your deliberations.

All litigants stand equal in this room. All litigants stand equal before the bar of justice. All litigants stand equal before you. Your duty is to decide between these parties fairly and impartially, and to see that justice is done.

Under your oath as jurors, you are not to be swayed by sympathy or prejudice. You should be guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to the consequences of your decision. You have been chosen to try the issues of fact and to reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy or prejudice interfere with your clear thinking, there is a risk that you will not arrive at a just

26

verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at a just verdict.

Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you to remain patiently in the jury box, without speaking to each other, and we will return in just a moment to submit the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                         :

JEAN-CLAUDE FRANCHITTI,            :

                      :

             Plaintiff,       :         21-CV-2174 (JMF)

                      :

     -v-                  :

                      :        <u>VERDICT FORM</u>

COGNIZANT TECHNOLOGY SOLUTIONS  :
CORPORATION et al.,          :

                      :

            Defendants.     :

                      :
------------------------------------------------------------------------X

**PLEASE CIRCLE YOUR ANSWERS**
*All Answers Must Be Unanimous*

**<u>Liability</u>**

1.      Has Dr. Franchitti proved, by a preponderance of the evidence, that Cognizant is liable to him for retaliation in violation of federal and New York state law?

          YES          NO

      ***[If you answered "NO," then skip the rest of the questions and proceed to the signature block on the last page.  If you answered "YES," proceed to Question 2.]***

     **<u>Damages</u>**

2.      Has Dr. Franchitti proved, by a preponderance of the evidence, that he is entitled to receive compensatory damages for any of the following injuries because of Cognizant's retaliation?

      a.  Back Pay

          YES          NO

          If so, what amount of back pay do you award?

          $_____

    b.  Front Pay

        YES          NO

        If so, what amount of front pay do you award, and for what period of time?

        Amount: $_____         Time: _____

    c.  Other injuries, such as mental or emotional distress

        YES          NO

        If so, what amount of compensatory damages for other injuries do you award?

        $_____

***[If you answered "NO" with respect to all of the injuries listed in Question 2, nominal damages of $1.00 will be awarded to Dr. Franchitti.  Regardless of your answer to Question 2, proceed to Question 3.]***

3.      Has Dr. Franchitti proved, by a preponderance of the evidence, that he is entitled to punitive damages because of Cognizant's retaliation?

        YES          NO

        If so, what amount of punitive damages do you award?

        $_____

***[Proceed to the signature block on the last page.]***

2

*Please review your answers to all of the Questions above to ensure that they accurately reflect your unanimous determinations.  When you have done so, sign your names below, fill in the date and time, and inform the Court Security Officer — with a note, <u>not the Verdict Form itself</u> — that you have reached a verdict.*

After completing the form, each juror who agrees with this verdict must sign below:


_____         _____
Foreperson


_____         _____



_____         _____



_____         _____


Date:          _____

Time:          _____

3

**COURT EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                              :

JEAN-CLAUDE FRANCHITTI,                      :

                  Plaintiff,                :

       -v-                      :

                      :       21-CV-2174 (JMF)

COGNIZANT TECHNOLOGY SOLUTIONS  :
CORPORATION et al.,             :

                Defendants.     :

------------------------------------------------------------------------X

# JURY CHARGE

March 27, 2026

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ............................................................................... 1

    Role of the Court and the Jury ...................................................................................................2

    The Parties .................................................................................................................................2

    Conduct of Counsel ...................................................................................................................2

    Direct and Circumstantial Evidence .........................................................................................3

    What Is and What Is Not Evidence ...........................................................................................4

    Demonstratives .........................................................................................................................5

    Limited Purpose Evidence ........................................................................................................6

    Credibility of Witnesses ...........................................................................................................6

    Prior Inconsistent Statements ...................................................................................................7

    Knowledge and Conduct of Corporate Employees ...................................................................8

    Expert Witnesses ......................................................................................................................9

    All Available Evidence Need Not Be Presented ......................................................................10

    Preponderance of the Evidence ...............................................................................................10

II. SUBSTANTIVE ISSUES ............................................................................................................ 11

    Retaliation Elements ...............................................................................................................11

    First Element: Protected Activity ............................................................................................12

    Second Element: Cognizant's Knowledge ..............................................................................13

    Third Element: Materially Adverse Employment Action ........................................................13

    Fourth Element: Causal Link ..................................................................................................14

    Damages Generally .................................................................................................................15

    Compensatory Damages .........................................................................................................15

    Nominal Damages ...................................................................................................................19

    Punitive Damages ...................................................................................................................19

III. CONCLUDING INSTRUCTIONS ........................................................................................... 21

    Selection of Foreperson ..........................................................................................................21

    Sending Notes .........................................................................................................................21

    Right to See Exhibits and Hear Testimony .............................................................................21

    Juror Note-Taking ...................................................................................................................22

    Duty to Deliberate ..................................................................................................................22

    Return of the Verdict ..............................................................................................................23

    Closing Comments ..................................................................................................................24

# I. GENERAL INTRODUCTORY CHARGES

Members of the jury, you have now heard all of the evidence and the lawyers' closing arguments. It is my duty at this point to instruct you as to the law. I am going to read my instructions to you. It is not my favorite way to communicate — and not the most scintillating thing to listen to — but there is a need for precision, and it is important that I get the words just right, and so that is why I will be reading.

I have given you a copy of my instructions to follow along because they cover many points. Please limit yourself to following along; that is, do *not* read ahead in the instructions. If you find it easier to listen and understand while you are following along with me, please do so. If you would prefer, you can just listen and not follow along. In the unlikely event that I deviate from the written instructions, it is my oral instructions that govern and that you must follow. But you may take your copy of the instructions with you into the jury room so you can consult it if you want to re-read any portion of the charge to facilitate your deliberations.

For now, listen carefully and try to concentrate on the substance of what I'm saying. You should not single out any instruction as alone stating the law. Instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

My instructions to you will be in three parts.

First, I will give you general instructions — for example, about your role as the jury, what you can and cannot consider in your deliberations, and the burden of proof.

Second, I will describe the law that you must apply to the facts as you find them to be established by the evidence.

Finally, I will give you some instructions for your deliberations.

1

Role of the Court and the Jury

You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It is your duty to accept my instructions as to the law and to apply them to the facts as you determine them.  If either party has stated a legal principle differently from any that I state to you in my instructions, it is my instructions that you must follow.

The Parties

As you know, the Plaintiff in this case is Jean-Claude Franchitti, and the Defendants are Cognizant Technology Solutions Corporation and its subsidiary, Cognizant Technology Solutions U.S. Corporation, which, for simplicity, I will refer to together as "Cognizant."  In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  No party is entitled to any greater or lesser consideration by you.  The fact that Cognizant is a corporation is irrelevant.  All litigants are equal before the law and each party in this case is entitled to the same fair consideration that you would give any other party.

Conduct of Counsel

The personalities and the conduct of counsel are not in any way at issue.  If you formed opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior, those opinions should not enter into your deliberations.

In addition, remember that it is the duty of a lawyer to object when the other side offers testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you should draw no inference from the fact that there was an objection to any testimony or evidence.

2

Nor should you draw any inference from the fact that I sustained or overruled an objection. Simply because I have permitted certain testimony or evidence to be introduced does not mean that I have decided on its importance or significance.  That is for you to decide.

Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict.  The first type is direct evidence.  Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed through the five senses.  The second type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day outside.  Also assume that the courtroom shades were drawn and you could not look outside.  Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact.  The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might

3

reasonably draw from other facts that have been proved.  It is for you, and you alone, to decide what inferences you will draw.

Importantly, circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence.  It asks only that you consider all the evidence presented.

What Is and What Is Not Evidence

What, then, is the evidence in the case?

The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received into evidence, and (3) any stipulations made by the parties.

A stipulation is an agreement between parties as to what certain facts were or what the testimony would be if certain people testified before you.  A stipulation is the same for your purposes as the presentation of live testimony.  You should consider the weight to be given such evidence just as you would any other evidence.

Nothing else is evidence.

For example, the questions posed to a witness are not evidence: It is the witnesses' answers that are evidence, not the questions.  In addition, exhibits marked for identification but not admitted by me are not evidence; nor are materials brought forth only to refresh a witness's recollection.  Moreover, testimony that has been stricken or excluded by me is not evidence and may not be considered by you in rendering your verdict.

Along these lines, you will recall that, among the exhibits received in evidence, some documents are redacted.  "Redacted" means that part of the document was deleted or blacked out.  As I previously told you, you are to concern yourself only with the part of the document

that has been admitted into evidence. You should not consider any possible reason why the other part of it has been deleted or blacked out.

Statements and arguments by the lawyers are also not evidence. What you heard during the opening statements and summations is merely intended to help you understand the evidence and reach your verdict. If your recollection of the facts differs from the lawyers' statements, you should rely on your recollection. If a lawyer made a statement during his or her opening or summation and you find that there is no evidence to support the statement, you should disregard the statement.

Finally, any statements that I may have made during the trial or during these instructions do not constitute evidence. At times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times, I may have asked a question myself. Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. The rulings I have made during the trial and these instructions are no indication of my views as to what your decision should be. Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you. That is entirely your role.

Demonstratives

During trial, the parties showed you what are called "demonstratives" — illustrations or reproductions of what the parties consider relevant information in this case. As I previously explained, demonstratives are not evidence. Instead, they were shown to you in order to aid you

5

in considering the evidence.  They are no better than the evidence upon which they are based.

Therefore, you are to give no greater consideration to these demonstratives than you would give

to the evidence upon which they are based.

It is for you to decide whether the demonstratives correctly present the information

contained in the evidence on which they were based.  You may consider the demonstratives if

you find that they are of assistance to you in analyzing and understanding the evidence.

Limited Purpose Evidence

If certain testimony or evidence was admitted or received for a limited purpose, you must

follow the limiting instructions I have given.

Credibility of Witnesses

How do you evaluate the credibility or believability of the witnesses?  The answer is that

you use your common sense.  There is no magic formula by which you can evaluate testimony.

You may use the same tests here that you use in your everyday life when evaluating statements

made by others to you.  You may ask yourselves: Did the witness impress you as open, honest,

and candid?  How responsive was the witness to the questions asked on direct examination and

on cross-examination?

If you find that a witness intentionally told a falsehood, that is always a matter of

importance you should weigh carefully.  On the other hand, a witness may be inaccurate,

contradictory, or even untruthful in some respects and entirely believable and truthful in other

respects.  It is for you to determine whether such inconsistencies are significant or

inconsequential, and whether to accept or reject all of the testimony of any witness, or to accept

or reject only portions.

You are not required to accept testimony even though the testimony is uncontradicted and the witness's testimony is not challenged. You may reject it because of the witness's bearing or demeanor, because of the inherent improbability of the testimony, or for any other reasons sufficient for you to conclude that the testimony is not worthy of belief.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such an interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, you should bear that factor in mind when evaluating the credibility of his or her testimony and decide whether to accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Prior Inconsistent Statements

You have heard evidence that, at some earlier time, a witness may have said something that one or the other party argued was inconsistent with the witness's testimony at trial.

Such prior statements are not themselves evidence; instead, they were presented to you for the purpose of helping you decide whether to believe the witness's testimony at trial. If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

7

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency and, if so, whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent and, if so, how much weight, if any, to give to the inconsistent statement in determining whether to believe all, or part of, the witness's trial testimony.

Knowledge and Conduct of Corporate Employees

A company can act only through its employees. Consequently, when you are considering the substantive rules of law about which I will instruct you, you should understand that a company is generally responsible for the conduct and knowledge of its employees who are acting in the course of, and within the scope of, their duties as employees for the company.

That also means that a company can "know" things only through its employees. As a general matter, the knowledge of an individual employee is "imputed" or attributed to his or her employer if the employee acquired the knowledge when he or she was acting within the scope of his or her employment and authority. That is true even if the employee did not formally communicate the information to his or her employer.

An employee is acting within the scope of his or her employment and authority if (1) he or she is engaged in the transaction of business that has been assigned to him or her by his or her employer or (2) he or she is doing anything that may reasonably be said to have been

8

contemplated as part of his or her employment.  It is not necessary that an act or failure to act was expressly authorized by the employer.

Expert Witnesses

During the trial, you heard testimony from an expert witness: Richard Turner.  As I told you, an expert witness is someone who, by education or experience, has acquired learning or experience in a specialized area of knowledge.  Such a witness is permitted to express his opinions on matters about which he has specialized knowledge and training.  A party may present expert testimony to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

The opinions stated by Mr. Turner were based on particular facts as he himself observed them and testified to them before you, or as he was told by somebody else or as appeared to him from some record or other material.  You may reject an expert witness's opinion if you find, from the evidence in this case, that the underlying facts are different from those that formed the basis of the expert's opinion.  You may also reject an expert's opinion if, after careful consideration of all the evidence in the case, including expert and other testimony, you disagree with that opinion.  In other words, you are not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other evidence.  Such an opinion is subject to the same rules concerning reliability as the testimony of any other witness, and it is allowed only to aid you in reaching a proper conclusion.

In weighing an expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as well as all of the other considerations that ordinarily apply, including all the other evidence in the case.  You may give expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however,

9

accept a witness's testimony merely because he qualifies as an expert. Nor should you substitute an expert's opinion for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

All Available Evidence Need Not Be Presented

The law does not require any party to call as witnesses — whether fact or expert witnesses — all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters at issue in this trial. Nor does the law require any party to produce or present as exhibits all papers and things mentioned in the evidence in the case.

You are not to rest your decision on what some absent witness who was not brought in might or might not have testified to. Each party had an equal opportunity, or lack of opportunity, to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what an absent witness would have testified to had he or she been called. The absence of a witness should not affect your judgment in any way.

Preponderance of the Evidence

Before I instruct you on the issues you must decide, I want to define for you the standard under which you will decide whether a party has met its burden of proof on a particular issue. The standard that applies in this case is the preponderance of the evidence. As I told you at the beginning of the trial, proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial, does not apply to a civil case such as this and you should put it out of your mind.

To establish something by a preponderance of the evidence means that the evidence of the party that has the burden of proof must be more convincing and persuasive to you than that

10

opposed to it. The difference in persuasiveness need not be great: So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof — that what the party claims is more likely true than not — then that element will have been proved by a preponderance of the evidence. And here it is important for you to realize that this refers to the quality of the evidence and not to the number of witnesses, the number or variety of the exhibits, or the length of time spent on a subject. In determining whether any fact has been proved by a preponderance of the evidence, you may consider all of the exhibits and the testimony of all of the witnesses.

# II. SUBSTANTIVE ISSUES

That completes my introductory instructions. Let me turn, then, to the law that applies to the issues in this case. As you know, Dr. Franchitti is a former employee of Cognizant. He brings claims for termination-based retaliation under two different laws: Title VII of the Civil Rights Act of 1964, which is a federal law, and the New York State Human Rights Law, which is (as it sounds) a New York law. The standards for unlawful retaliation are largely the same under the federal law and the state law, so I will discuss the claims together.

Retaliation Elements

To prevail on his retaliation claims, Dr. Franchitti must show by a preponderance of the evidence the following four elements:

First, that he engaged in "protected activity" — that is, an activity that is protected by the anti-discrimination laws that are at issue here;

11

Second, that Cognizant was aware of Dr. Franchitti's participation in the protected activity prior to taking some adverse employment action;

Third, that Cognizant took a materially adverse employment action against him; and

Fourth, that Cognizant took the materially adverse employment action against him because of the protected activity.

If you find that Dr. Franchitti has failed to prove any of these elements, then you must find for Cognizant.

First Element: Protected Activity

A plaintiff engages in a protected activity when he complains about what he reasonably and in good faith believes to be unlawful, discriminatory employment practices.  A formal or informal complaint to management can constitute protected activity.

To satisfy this element, Dr. Franchitti must show, by a preponderance of the evidence, that he complained about race or national origin discrimination.  Dr. Franchitti need not establish that his claims of discrimination were valid.  Instead, he must show, by a preponderance of the evidence, only that he had a good faith, objectively reasonable belief when he complained of his employer's actions that those actions violated the anti-discrimination laws, specifically that they were discriminatory on the basis of race or national origin.

As I explained to you earlier in the trial, Dr. Franchitti has not alleged in this case that Cognizant retaliated against him for complaining of *age* discrimination.  Thus, although you heard evidence that Dr. Franchitti raised concerns about age discrimination, if you find that Dr. Franchitti complained *only* of age discrimination, and not of race or national origin discrimination, you must conclude that Dr. Franchitti did not engage in protected activity.

12

Likewise, raising concerns that Cognizant engaged in visa fraud or otherwise violated immigration laws does not in itself constitute protected activity. Accordingly, you may not find that Dr. Franchitti engaged in protected activity because he complained about Cognizant's visa practices alone. You may consider such evidence when deciding whether Dr. Franchitti complained of race or national origin discrimination. For example, if you find that Dr. Franchitti complained that Cognizant's visa practices were used a mechanism for discrimination on the basis of race or national origin, such a complaint would constitute protected activity. You may not, however, find that Dr. Franchitti engaged in protected activity solely because he complained about Cognizant's visa practices.

Second Element: Cognizant's Knowledge

The second element Dr. Franchitti must prove is that Cognizant was aware of his participation in the protected activity prior to taking some adverse employment action. Dr. Franchitti satisfies that element if he shows by a preponderance of the evidence that Cognizant was aware of his protected activity prior to terminating his employment.

Dr. Franchitti need not prove that any particular person within Cognizant had the required awareness; it is sufficient that Cognizant as an entity was generally aware of his protected activity prior to terminating his employment. To show such awareness, Dr. Franchitti must prove by a preponderance of the evidence that Cognizant understood, or could reasonably have understood, that his complaints concerned discrimination on the basis of race or national origin.

Third Element: Materially Adverse Employment Action

The third element Dr. Franchitti must prove is that Cognizant took a materially adverse employment action against him. Here, the only adverse employment action that Dr. Franchitti

13

alleges is his termination of employment. Termination of employment constitutes a materially adverse employment action.

Fourth Element: Causal Link

Finally, to prevail on his claims, Dr. Franchitti must show that Cognizant took the materially adverse employment action against him "because of" his participation in the protected activity. To satisfy this element, Dr. Franchitti must prove by a preponderance of the evidence that, had he not complained about race or national origin discrimination, he would not have been fired. Close proximity in time between an employee's act and an employer's alleged retaliation can, though does not necessarily, establish a causal link between the two.

When you consider whether Dr. Franchitti has proved that he was fired "because of" retaliation, you should first decide whether you believe that Cognizant was in fact motivated by a desire to retaliate against him because of his complaints about race or national origin discrimination. If not, you must find in favor of Cognizant.

On the other hand, if you conclude that Cognizant was motivated by a desire to retaliate, next consider whether the company also had any non-retaliatory reason or reasons to fire Dr. Franchitti. If you decide that there were no other motives to fire Dr. Franchitti, and that his firing was solely motivated by retaliation, then you must find for him.

If there were other, non-retaliatory reasons for Cognizant to fire Dr. Franchitti, however, then you must consider this question: Would Cognizant have fired him based only on non-retaliatory reasons? In other words, do you believe that Cognizant actually fired Dr. Franchitti only for non-retaliatory reasons or do you believe that Cognizant is relying on non-retaliatory reasons to conceal the fact that it would not have fired Dr. Franchitti had he not complained of discrimination? If you decide that Cognizant would have fired Dr. Franchitti regardless of its

14

retaliatory intent, then you must find for Cognizant.  If, however, you conclude that Cognizant would not have fired ~~the~~ Dr. Franchitti were it not for a retaliatory reason, then you must find for him.

The question is not whether a defendant's reasons showed poor or erroneous judgment. You are not to judge Cognizant's wisdom or general fairness.  An employer is entitled to make its decisions for good reasons, bad reasons, or no reason at all — so long as the decision is not motivated by unlawful retaliation.

Damages Generally

If you conclude that Dr. Franchitti has met his burden of proving liability, then you must determine the damages, if any, to which he is entitled.  You should not infer that Dr. Franchitti is entitled to recover damages merely because I am instructing you as to damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that they are warranted.

Here, Dr. Franchitti is seeking two categories of damages: "compensatory damages" and "punitive damages."  I will explain each category in turn.

Compensatory Damages

"Compensatory damages" are designed to make a plaintiff whole — that is, to compensate a plaintiff for the injury suffered as a result of the defendant's unlawful conduct. Compensatory damages are not intended to punish a defendant and should not provide the plaintiff with more than what is required to make him whole.  Any damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory

15

damages based on speculation, but only for those injuries that the party bearing the burden of proof has proved according to the standards that I described to you.

Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that a plaintiff prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. Nonetheless, damages must be established with reasonable certainty. In all instances, you are to use sound discretion in fixing any award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

"Back Pay"

You may award damages for any lost wages and employee benefits that Dr. Franchitti would have received from the date he was fired to the date of your verdict, had he not been terminated for retaliatory reasons. This is known as "back pay." You must reduce any such award, however, by the amount of the expenses that Dr. Franchitti would have incurred in making those earnings and by the amount of any earnings that Dr. Franchitti has received from other sources that he would not have received had he continued to work for Cognizant.

"Front Pay"

Next, if you find that Dr. Franchitti will be unable to earn in the future what he would have earned at Cognizant, then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (1) the date you believe he would have worked at Cognizant absent any retaliatory conduct or (2) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. This is known as "front pay." If you find that Dr. Franchitti is entitled to an award of front pay, you should state

16

the total dollar amount of that award and indicate the period over which such an award is intended to compensate him.  Factors to be considered in determining front pay include Dr. Franchitti's age, work history, and likelihood of finding comparable employment.

Emotional Harms

Finally, you may award damages for any pain, suffering, humiliation, or mental anguish that Dr. Franchitti experienced as a consequence of Cognizant's retaliation.  There is no requirement that evidence of the monetary value of such intangible things as pain and suffering be introduced into evidence.  There is no exact standard for fixing the compensation to be awarded for these elements of damages and no expert testimony need be introduced.  Any award you make should be fair in light of the evidence presented at the trial.  In order to recover damages for mental and emotional distress, Dr. Franchitti must present credible evidence with respect to the claimed mental anguish and corroboration, either by competent medical proof or by the circumstances of the case.  Psychiatric or other medical treatment is not a precondition to recovery.  Mental and emotional distress may be proved by Dr. Franchitti's own testimony, corroborated by reference to the circumstances of the alleged misconduct.

Dr. Franchitti can recover only for the mental and emotional distress, if any, that he proves, by a preponderance of the evidence, was proximately caused by the retaliatory conduct by Cognizant.  A plaintiff's damages are proximately caused by a defendant's conduct if the damages are a reasonably foreseeable consequence of that conduct.  Thus, if you find that Dr. Franchitti has proved that he suffered mental or emotional distress, and that the distress was proximately caused by the retaliation, you must fix the amount of damages that will, as much as money can, fairly compensate Dr. Franchitti for his injuries.

17

### Dr. Franchitti's Duty to Mitigate

You are also instructed that Dr. Franchitti has a duty under the law to "mitigate" his damages — that is, to exercise reasonable diligence under the circumstances to reduce or minimize his damages. On this issue, the burden is on Cognizant, not Dr. Franchitti.

If you consider whether Dr. Franchitti fulfilled his duty to mitigate his damages, you should first decide whether Cognizant proved by a preponderance of the evidence that Dr. Franchitti made no reasonable efforts at all to find comparable employment after being terminated. If it has, you should not award Dr. Franchitti any back pay or front pay damages.

If you conclude that Dr. Franchitti made some reasonable efforts to obtain employment after being terminated, however, you should ask yourself, as to back pay, whether Cognizant proved by a preponderance of the evidence that comparable employment was actually available and that Dr. Franchitti did not make reasonable efforts to obtain those positions. If it did, then you should reduce any award of back pay by the amount you find that Dr. Franchitti could have earned from such employment.

Next, before awarding any front pay, you should consider whether Cognizant proved, by a preponderance of the evidence, that Dr. Franchitti, using reasonable care and diligence, will be able to obtain a comparable job in the future. If it did, then you should reduce any award of front pay by the amount you find that he would earn through such other employment.

In assessing the reasonableness of Dr. Franchitti's efforts to mitigate his damages, you may consider what you have learned about Dr. Franchitti's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Dr. Franchitti to find suitable work. In weighing the evidence, keep in mind that Dr. Franchitti is under no obligation to enter another line of work or to take a demotion or a demeaning job.

18

Nominal Damages

If you find, after considering all the evidence presented, that Dr. Franchitti has prevailed on his claims, but he either suffered no injury as a result of Cognizant's conduct or you are unable to compute compensatory damages except by engaging in pure speculation and guessing, you must award him "nominal damages" of $1.00. "Nominal damages" are awarded as recognition that a plaintiff's rights have been violated.

You may not award both nominal and compensatory damages to Dr. Franchitti; either he experienced actual damages in an amount you can calculate, in which case you must award compensatory damages, or else he did not, in which case you must award nominal damages.

Punitive Damages

Aside from actual and nominal damages, you may also consider an award of punitive damages in this case. In some cases, punitive damages may be awarded for the purpose of punishing a defendant for that defendant's wrongful conduct and to deter others from engaging in similar wrongful conduct. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. It is Dr. Franchitti's burden to establish that punitive damages are appropriate by a preponderance of the evidence.

You may, but are not required to, award punitive damages, as long as you find that Cognizant acted with malice or reckless indifference to Dr. Franchitti's right not to be retaliated against for complaining about race and national origin discrimination, and not merely that Cognizant's actions were unreasonable. You should find that Cognizant has acted with malice or indifference if Dr. Franchitti has proved that the company knew that the termination was in violation of the law prohibiting the retaliation or acted with reckless disregard of that law — that

19

is, with an intention to disregard what it knew was a high probability that its acts were in violation of the law.  The requisite state of mind may be inferred from the circumstances.

However, you may not award punitive damages against Cognizant if it has proved that Cognizant itself made a good-faith effort to comply with the law prohibiting retaliation and that any manager or supervisor responsible for the retaliation was therefore acting in contradiction of company policy and practice.

If you find that Cognizant acted with malice or reckless disregard and did not make a good-faith effort to comply with the law, then in addition to any actual or nominal damages to which you find Dr. Franchitti is entitled, you may, but are not required to, award Dr. Franchitti an additional amount as punitive damages if you find it is appropriate to punish Cognizant or to deter Cognizant and others from like conduct in the future.  Whether to award Dr. Franchitti punitive damages, and the amount of those damages, are within your discretion.

If you decide punitive damages are warranted, in arriving at your decision as to the amount of punitive damages, you should consider the nature and reprehensibility of what Cognizant did.  That would include the character of the wrongdoing, such as: whether the acts were done with an improper motive or vindictiveness; whether the acts constituted outrageous or oppressive intentional misconduct; how long the conduct went on; Cognizant's awareness of what harm the conduct caused or was likely to cause; any concealment or covering up of the wrongdoing; how often Cognizant had committed similar acts of this type in the past, and the actual and potential harm created by Cognizant's conduct.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by Dr. Franchitti and to the compensatory damages you awarded.  The reprehensibility of Cognizant's conduct is an important factor in

20

deciding the amount of punitive damages to award that would be reasonable and proportionate. You may also consider Cognizant's financial condition and the impact any punitive damages award would have on Cognizant.

## III. CONCLUDING INSTRUCTIONS

Selection of Foreperson

In a few minutes, you are going to go into the jury room and begin your deliberations. Your first task will be to select a foreperson. The foreperson has no greater voice or authority than any other juror, but is the person who will communicate with me when questions arise and when you have reached a verdict. The foreperson is also who will be asked in open court to pass your completed Verdict Form to me.

Sending Notes

You may have questions or comments for me as you deliberate. If you do, you can communicate with me by sending notes using forms and envelopes that you will be provided for that purpose. Your notes to me should be signed by the foreperson and should include the date and time they were sent. They should also be as clear and as precise as possible, as they will become part of the record in this case. Do not tell me or anyone else how you stand on any issue until after a unanimous verdict is reached.

Right to See Exhibits and Hear Testimony

All of the exhibits will be given to you near the start of deliberations. Most of it will be provided to you on a laptop. In addition, you will also be provided with a list of all the exhibits

21

that were received into evidence.

If you prefer to view any evidence here in the courtroom or if you want any of the testimony submitted to you or read back to you, you may also request that. Keep in mind that if you ask for testimony, however, the court reporter must search through his or her notes, the parties must agree on what portions of testimony may be called for, and if they disagree I must resolve those disagreements. That can be a time-consuming process. So please try to be as specific as you possibly can in requesting portions of the testimony, if you do.

Again, your requests for testimony — in fact, any communication with the Court — should be made to me in writing, signed by your foreperson with the date and time, and given to one of the Court Security Officers.

Juror Note-Taking

If any one of you took notes during the course of the trial, you should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror. Finally, your notes are not to substitute for your recollection of the evidence in the case. If, during your deliberations, you have any doubt as to any of the testimony, you may — as I just told you — request that the official trial transcript that has been made of these proceedings be submitted or read back to you.

Duty to Deliberate

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact. I know you will try the issues that

22

have been presented to you according to the oath that you have taken as jurors. In that oath, you promised that you would well and truly try the issues joined in this case and a true verdict render.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold the center stage in the jury room, and no one juror should control or monopolize the deliberations. If, after listening to your fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

Your verdict must be unanimous. If at any time you are not in agreement, you are instructed that you are not to reveal the standing of the jurors — that is, the split of the vote — to anyone, including me, at any time during your deliberations.

Return of the Verdict

We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is attached to these instructions. Do not write on your individual copies of the Verdict Form. My staff will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the foreperson has been selected.

As you will see, the Verdict Form is kind of like those old "choose your own adventure" books. Depending on your answer to a question or questions, you will be directed to either answer another question or to sign the Verdict Form. You should draw no inference from the questions on the Verdict Form as to what your verdict should be. The questions are not to be taken as any indication that I have any opinion as to how they should be answered.

23

When you have completed the Verdict Form, please review your answers to ensure that they accurately reflect your unanimous determinations.  If they do, the foreperson should note the date and time and you should all sign the Verdict Form.  The foreperson should then give a note — **not** the Verdict Form itself — to the Court Security Officer outside your door, stating that you have reached a verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should retain the Verdict Form and hand it to me in open court when I ask for it.

I will stress again that **all** of you must be in agreement with the verdict that is announced in court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be revoked.

Closing Comments

Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse to say it: You should treat each other with courtesy and respect during your deliberations.

All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, and to see that justice is done.

Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You should be guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to the consequences of your decision.  You have been chosen to try the issues of fact and to reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy or prejudice interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at a just verdict.

24

Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you to remain patiently in the jury box, without speaking to each other, and we will return in just a moment to submit the case to you.  Thank you.

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                            :

JEAN-CLAUDE FRANCHITTI,                :

                         :

                Plaintiff,        :             21-CV-2174 (JMF)

                         :

          -v-                       :

                         :             <u>VERDICT FORM</u>

COGNIZANT TECHNOLOGY SOLUTIONS    :
CORPORATION et al.,

                         :

               Defendants.      :

                         :
-------------------------------------------------------------------X

**PLEASE CIRCLE YOUR ANSWERS**
***All Answers Must Be Unanimous***

**<u>Liability</u>**

1.      Has Dr. Franchitti proved, by a preponderance of the evidence, that Cognizant is liable to him for retaliation in violation of federal and New York state law?

         YES           NO

***[If you answered "NO," then skip the rest of the questions and proceed to the signature block on the last page.  If you answered "YES," proceed to Question 2.]***

     **<u>Damages</u>**

2.      Has Dr. Franchitti proved, by a preponderance of the evidence, that he is entitled to receive compensatory damages for any of the following injuries because of Cognizant's retaliation?

     a.   Back Pay

         YES           NO

         If so, what amount of back pay do you award?

         $_____

b.  Front Pay

        YES              NO

        If so, what amount of front pay do you award, and for what period of time?

        Amount: $_____            Time: _____

c.  Other injuries, such as mental or emotional distress

        YES               NO

        If so, what amount of compensatory damages for other injuries do you award?

        $_____

*[If you answered "NO" with respect to __all__ of the injuries listed in Question 2, nominal damages of $1.00 will be awarded to Dr. Franchitti.  Regardless of your answer to Question 2, proceed to Question 3.]*

3.  Has Dr. Franchitti proved, by a preponderance of the evidence, that he is entitled to punitive damages because of Cognizant's retaliation?

        YES               NO

        If so, what amount of punitive damages do you award?

        $_____

*[Proceed to the signature block on the last page.]*

***Please review your answers to all of the Questions above to ensure that they accurately reflect your unanimous determinations.  When you have done so, sign your names below, fill in the date and time, and inform the Court Security Officer — with a note, <u>not the Verdict Form itself</u> — that you have reached a verdict.***

After completing the form, each juror who agrees with this verdict must sign below:

_____     _____
Foreperson

_____     _____

_____     _____

_____     _____

Date:        _____

Time:        _____

3