**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN-CLAUDE FRANCHITTI,<br><br>Plaintiff,<br><br>*-against-*<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>Defendants. | Civil Action No. 1:21-cv-02174-JMF<br>(Hon. Jesse M. Furman) |

**REPLY BRIEF IN FURTHER SUPPORT OF**
**<u>DEFENDANTS' POST-TRIAL MOTIONS</u>**

Hanna E. Martin
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
hanna.martin@morganlewis.com

Celina Antonellis (*pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Tel: 617.341.7700
celina.antonellis@morganlewis.com

A. Klair Fitzpatrick (*pro hac vice*)
Jack Dodds (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103-3007
Tel: 215.963.5000
Fax: 215.963.5001
klair.fitzpatrick@morganlewis.com
john.dodds@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

## I. PLAINTIFF FAILS TO SHOW A GENUINE DISPUTE OF MATERIAL FACT SUPPORTING CAUSATION.

Plaintiff fails to rebut Cognizant's undisputed evidence of legitimate, non-retaliatory reasons for termination. Instead, he argues that the jury could have disbelieved Cognizant's witnesses and inferred retaliation. But conjecture is not proof of causation, particularly where Plaintiff's account lacks corroboration and requires stacking unsupported inferences. Faced with that record, Plaintiff attempts to blur the Rule 50(b) standard. Although a court must defer to a jury's reasonable inferences, it "can give no deference to impermissible speculation," and even "reasonable speculation" is insufficient where it is "premised on a fact that is not known." *Aghaeepour v. N. Leasing Sys., Inc.*, 763 F. Supp. 3d 580, 588 (S.D.N.Y. 2025), *aff'd*, 2026 WL 1183399 (2d Cir. Apr. 29, 2026). Under the applicable standard (summary judgment), Plaintiff failed to prove that retaliation was the but-for cause of his termination. *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023). That conclusion is only emphasized by Plaintiff's Opposition, for three reasons.

*First*, temporal proximity alone cannot establish causation. *Brown v. City Univ. of N.Y.*, 2026 WL 456924, at *3 (2d Cir. Feb. 18, 2026) (Second Circuit "repeatedly held … temporal proximity alone cannot create an issue of fact" of pretext). Even a one-month gap between protected activity and termination does not establish causation when there are pre-existing performance concerns and plaintiff otherwise offers only "bald assertions" that he would not have been fired absent retaliation. *Golden v. Syracuse Regional Airport Authority*, 2024 WL 4116427, at *3 (2d Cir. Sep. 9, 2024). Just so here: before Plaintiff's alleged April 2016 complaints, Bala and Livingston had substantial concerns about his performance, leadership, accountability, and ability to work with others, and they later accelerated his termination following misconduct consistent with those concerns. Mot. 4.

*Second*, Plaintiff cannot show that his termination was the "culmination" of a "years-long campaign of retaliation." Opp. 8. Franchitti highlights Bala's scrutiny of his expenses. But the *unrebutted* evidence demonstrated that such scrutiny was due to 2015's Margin Optimization. Mot. 8; Tr. 288:4–289:4. Plaintiff next points to Livingston's criticism, but every criticism was tied to established performance metrics and/or documented leadership, accountability, or other concerns. *See* Mot. 9-10.[1] And even after Plaintiff's alleged complaints, Bala nominated him for promotion, provided positive feedback in support, worked on an action plan for improvement, and delayed termination while suggesting alternatives—conduct inconsistent with but-for retaliatory intent. *Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, 2013 WL 12618658, at *7 (S.D.N.Y. Oct. 22, 2013) (collecting cases, "a positive action" between protected activity and adverse action "breaks the chain of causation"). In response, Plaintiff identifies no similarly situated leader treated more favorably, fails to address the dispositive fact that his counterpart, Ramasubramanian, faced the same standards and treatment without protected activity. Mot. 9. He offers only conjecture about what the jury "could have believed."

*Third*, Plaintiff cannot show pretext through "inconsistent" termination explanations and misstating evidence. The "restructuring" was not pretextual simply because his behavior accelerated the timing. Cognizant planned to and did eliminate his position to hire Seth Siegel, a process that began in ***fall 2014*** *before his alleged complaints*, and so informed Plaintiff at termination, as *Plaintiff* testified. PX-24, PX-70; Tr. 451:9-452:14, 628:8-15; 166:15-23; PX-1.

[1] Plaintiff cites cases involving witnesses with interests discrediting their testimony. But Cognizant's witnesses no longer work there and have no financial interest in the outcome. Theirs was just the sort of "unimpeached, disinterested, uncontradicted, and plausibly credible" testimony that courts presume "[t]he jury [was] required to believe" under Rule 50. *Rucks v. City of N.Y.*, 96 F. Supp. 3d 138, 148 (S.D.N.Y. 2015).

But Franchitti's disruptive behavior—culminating in him undisputedly screaming at Neveras—led Human Resources and Legal to recommend termination early. Mot. 3-4. Plaintiff argues that his performance was satisfactory because, by July 2016, CBC-GTO's financial metrics had improved from 2014 and 2015.[2] But the unrebutted evidence proved that his non-financial performance issues drove that decision.[3] Tr. 592:25-10; 466:8-467:1. Nor could a reasonable jury have found it "implausible" that Franchitti's "polite" behavior changed, given Plaintiff's insubordinate emails and unrebutted evidence of conflicts with clients, colleagues, subordinates, and Neveras. Mot. 3-4. Plaintiff compares apples and oranges by arguing that Livingston should have overlooked his refusal to bill a single client hour because CBC-GTO's D+ utilization was above average and mischaracterizes his highly critical evaluations as exceeding expectations. Opp. 12-13; DX-11; DX-32. He concedes his missed deadlines and offers no basis to believe that Bala fabricated his expense concerns. *Id.*

## II. THE OPPOSITION DEMONSTRATES A NEW TRIAL IS WARRANTED.

Plaintiff does not address Cognizant's argument that his failure to prove causation warrants a new trial under Rule 59 on its own, nor does he meaningfully address the inconsistencies in his testimony or the manifest prejudice created by evidentiary issues.

### A. Franchitti's Opposition Relies Only on Self-Serving, Inconsistent Testimony.

Recognizing that the documentary record overwhelmingly contradicts his claims, Plaintiff attempts to recast Cognizant's Motion as nothing more than a dispute over witness credibility.

---

[2] Plaintiff's assertion that Bala "sabotaged" his business was unsupported by evidence and undermined by Bala helping Plaintiff improve his results. *See* Mot. 8; Tr. 439:15-23.

[3] Plaintiff wrongly suggests that Bala's May statement regarding US revenue was inaccurate by citing CBC-GTO's global revenue in July 2016. Opp. 4-5. Those are different metrics measured at different times.

Opp. 13. But courts do "weigh the evidence" and "consider … credibility" under Rule 59. *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998). A new trial is warranted because Plaintiff's allegations are uncorroborated and contradicted by substantial evidence. Despite claims that he complained about discrimination to numerous employees over many years, Plaintiff identifies no corroborating evidence, which is especially telling given his practice of persistently detailing every other kind of complaint in writing. Mot. 12-13. Ultimately, Plaintiff concedes that the supposedly "ample evidence" of his protected activity is solely "his testimony." Opp. 14.

Nor is this simply a matter of choosing between Plaintiff's testimony and Cognizant's witnesses, all of whom denied receiving such complaints. Mot. 4. Plaintiff's trial testimony materially differed from his prior sworn statements. Mot. 13. Plaintiff argues those inconsistencies were fodder for cross-examination. Opp. 15. They were, and Cognizant repeatedly impeached him. Yet the verdict disregarded not only that impeachment evidence, but also the lack of documentary support and contrary testimony from disinterested witnesses. Plaintiff's self-serving testimony was "so inherently implausible as to tax credulity." *Finn-Verburg v. N.Y. State Dep't of Lab.*, 165 F. Supp. 2d 223, 228 (N.D.N.Y. 2001). The weight of the evidence therefore favored Cognizant.

Seeking to bolster his credibility, Plaintiff tries to manufacture inconsistencies in Bala's testimony. Those efforts fail. *Plaintiff* testified that "heavyweights" meant directors and above and PX-28 reflects a desire not to hire an Indian worker—not an instruction to bench Americans. Tr. 207:5-19, 406:5-408:11. The Chopra documents likewise corroborate Bala's testimony: *Plaintiff* suggested moving Chopra (the only UK employee) to GTO, and Bala agreed because GTO UK had an available role, while emphasizing he had *no role* for an Indian employee (Vikram). Tr. 506:24–509:14; DX-23; PX-32. Plaintiff mischaracterizes Bala's testimony regarding discrimination complaints. After Bala testified that discrimination complaints were never

"mention[ed]" "during conversations about releasing [Plaintiff]" (Tr. 539:25-540:3), Plaintiff attempted to impeach him with an unrelated discussion regarding the word "younger," but Bala consistently distinguished such communications from the race discrimination complaints at issue here. Tr. 540:9–545:15.

These disputes underscore the error in excluding Plaintiff's prior lawsuits. Cognizant did not seek to introduce the Bloomberg and JCrew cases as propensity evidence, but as motive to fabricate protected activity. *Bloomberg*'s credibility findings were highly probative in a case that likewise turned on Plaintiff's testimony. Plaintiff even concedes that, absent the Court's ruling, Rule 608(b) would have allowed Cognizant to question him about Judge Kaplan's credibility findings. Opp. 19. Contrary to the Court's Rule 403 ruling (Dkt. 183), this evidence was highly probative because Plaintiff's case hinged on whether his testimony of protected activity was credible.

Contrary to Plaintiff's assertion, Rule 59 does not require the Court to sustain a verdict that rests solely on Plaintiff's uncorroborated account, contradicted by his prior sworn statements, unsupported by any contemporaneous documentation, and rejected by every witness.

**B. The Jury Was Focused on Cognizant's Alleged "Business Model."**

Plaintiff dismisses Cognizant's evidentiary arguments as an attempt to relitigate "old issues." Opp. 17. But evidentiary errors—even previously contested ones—require a new trial when they materially swayed the jury. *Arlio v. Lively*, 474 F.3d 46, 51-52 (2d Cir. 2007) (vacating judgment and remanding for new trial due to erroneous admission of evidence). Here, the Court permitted Plaintiff to improperly enter irrelevant, prejudicial evidence that was precluded from discovery and that would, and did, sway the jury in a "material fashion." Mot. 6.

The Court repeatedly held that *Palmer*-related materials and broader allegations of discrimination were irrelevant to Plaintiff's retaliation claim. Mot. 14-15. Thus, at the final pretrial

conference, Plaintiff assured the Court that Israel's testimony would establish a retaliatory motive for the termination, connected to the relevant decision-makers and events. Mot. 15. Instead, Israel, whose employment did not overlap with Plaintiff (Tr. 702:20-21), testified about her alleged analyses of company-wide pay disparities affecting Indian nationals, analyses never produced in this case, and concerns she allegedly raised years after Plaintiff's termination to individuals wholly unrelated to his termination. Mot. 15-16. Plaintiff then used that testimony in summation to argue that Cognizant's "business model" was an "abuse of the system" and as evidence of protected activity, knowledge, and causation. Mot. 16-17.

Plaintiff's response—that Cognizant should have investigated Israel's testimony—only highlights the prejudice. "Because the standard of relevance in the context of discovery is broader than it is in the context of admissibility[,] … evidence that is not discoverable generally cannot be admissible." *Benson v. City of Lincoln*, 2023 WL 6796391, at *8 (D. Neb. Oct. 13, 2023) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Here, the Court held that each area of Israel's testimony was so irrelevant as to be *outside the scope of discovery* and reaffirmed this in its pretrial holdings.[4] It is nonsensical to suggest that Cognizant should have nonetheless prepared for the admission of such evidence at trial. *Cf. Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 306 (S.D.N.Y. 2008) ("[O]ur system of justice relies on … the opposing party to ferret out false or misleading testimony," which "only works effectively if … an adversary [has] an adequate opportunity to prepare," contrary to "plaintiff's failure to disclose her calculations in advance of trial.").

[4] *E.g.*, Dkt. 90 ("most, if not all, of the materials at issue are not relevant to the retaliation claims remaining in this case").

And Israel's testimony was irrelevant and speculative. Plaintiff insists that Israel's testimony showed motive rather than discrimination based on vague statements that she heard that "Cognizant liked employing [cheaper] visa workers" and thus was motivated to "get rid of" Plaintiff. But Israel offered no connection to Bala, Livingston, or the termination decision. In fact, Bala did not have financial objectives (Tr. 473:16-18), and, despite her complaints, Cognizant did not "upend its entire business model" or "get rid of" Israel. Mot. 15-16; Tr. 708:5-7, 709:17-19. Her testimony and Counsel's summation were speculative, irrelevant, and substantially influenced the jury.

## III. PLAINTIFF OFFERS NO NON-SPECULATIVE BASIS FOR ECONOMIC DAMAGES.

### A. Plaintiff All but Concedes He Failed to Mitigate.

Cognizant demonstrated that Plaintiff's minimal efforts to obtain employment constituted a failure to mitigate as a matter of law. Mot. 20-24. Plaintiff does not dispute that he only "formally" applied to one job and has evidence of five applications over a decade. Opp. 21-22. Rather than confront this record, Plaintiff argues that he need not document every application and was not required to pursue positions for which he was "overqualified," and seeks credit for his conjecture that recruiters may have applied to "hundreds" of jobs on his behalf. Opp. 20. But Plaintiff failed to identify even one company to which he supposedly applied, let alone produce related documents, and he sent zero related emails in most years. This is not a case of a diligent, but unsuccessful, job search; instead, it involves virtually no effort to obtain employment.

Plaintiff identifies no authority holding that a plaintiff exercises reasonable diligence by passively waiting for recruiters to contact him. His cases involved either substantial search efforts or evidence that comparable employment was unavailable. *E.g.*, *Ahmad v. N.Y. Univ.*, 2025 WL 3022862, at *25 (S.D.N.Y. Oct. 29, 2025) (50-60 job applications and a job within four years);

*EEOC v. Kallir, Philips, Ross Inc.*, 420 F. Supp. 919, 922-25 (S.D.N.Y. 1976) (pre-*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998),[5] evidence plaintiff reached out to many agencies and applied for jobs); *Ramey v. Dist. 141, Int'l Ass'n. of Machinists & Aerospace Workers*, 2010 WL 3619708, at *6 (E.D.N.Y. Sep. 10, 2010) (plaintiffs proved no reasonable expectation of securing comparable employment).

Nor did Turner fill that gap. Opp. 21. He testified that Plaintiff "should have applied to more jobs directly" rather than "sitting and waiting" for recruiters. Tr. 757:14-25. Turner further testified that comparable positions were generally advertised online, not filled exclusively through recruiters, and identified thousands of such postings. Tr. 758:1-13, 736:9-23. His testimony confirmed what both common sense and the law require: affirmative job-search efforts, not passive reliance on recruiters for 9+ years.

Finally, Plaintiff admitted that comparable jobs existed. Mot. 23. The unrebutted evidence showed that thousands of comparable positions were available and that he likely would have secured one within four to six months had he exercised reasonable diligence. Five documented applications did not give the jury a reasonable basis to disregard the evidence and award nearly ten years of back pay based on speculation that Plaintiff was unemployable.

**B. Plaintiff Identifies No Non-Speculative Basis for the Inflated Back Pay Award.**

In employment cases, damages are not presumed, and speculative damages may not be awarded. *Hine v. Mineta*, 238 F. Supp. 2d 497, 501 (E.D.N.Y. 2003) (no economic damages where "the calculation method is unduly speculative"); *Tse*, 568 F. Supp. 2d at 274, 298-308 ("plaintiff's burden to present a non-speculative basis for determining economic damages"; jury cannot resort to "speculation or guesswork"). The jury had no non-speculative basis to (1) assume that Plaintiff

[5] Given *Greenway* and its progeny, Plaintiff cannot rely on "informal" efforts. Mot. 22.

would have remained employed for another decade or (2) award nearly $1 million beyond Plaintiff's actual lost wages. Mot. 24.

*First*, the unrebutted evidence showed that Siegel would soon have replaced Plaintiff. Nine individuals agreed he was the best choice. Mot. 3. He replaced both Plaintiff and another employee (DX-28), and he began transitioning in Spring 2016 (Tr. 335:1-13). No evidence suggested that another AVP role was otherwise available or that any then–Cognizant employee still works there today. On this record, no reasonable jury could conclude that Plaintiff would have stayed for ten more years. *Hine*, 238 F. Supp. 2d at 501 (damages award unduly speculative where plaintiff assumed, but did not prove, that she would have remained and progressed in her role).

*Second*, Plaintiff's inflated back pay award cannot stand. To start, Plaintiff surmises that the jury "could" find that Plaintiff would have received wage increases and that the jury "could" adjust for "inflation." Opp. 22. But Plaintiff presented no evidence of Cognizant's wage increases or inflation rates; so, he argues that the jury could substitute "general knowledge" to draw these conclusions. Opp. 22-23. His cases, however, are inapposite. Those plaintiffs, unlike Franchitti, provided actual evidence. *E.g.*, *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727 (2d Cir. 1984) (noting "evidence and arguments" regarding "the effects of inflation"); *Koyen v. Consol. Edison Co. of N.Y., Inc.*, 560 F. Supp. 1161, 1164 (S.D.N.Y. 1983) (evidence of wage increases); *United States v. English*, 521 F.2d 63, 75-76 (9th Cir. 1975) ("in awarding damages[,]" jury's "estimates of future changes in the purchasing power of money" must be "based on sound and substantial economic evidence"). Plaintiff also failed to prove the value of his stock options, introducing neither a vesting schedule nor evidence of Cognizant's relative stock price. *Mathias v. Jacobs*, 238 F. Supp. 2d 556, 575 (S.D.N.Y. 2002) (plaintiff's burden to prove "actual market

value of the options"). Finally, Plaintiff did not present evidence of lost benefits, as NYU provided health insurance. Mot. 4; *Rivera v. Baccarat, Inc.*, 34 F. Supp. 2d 870, 875 (S.D.N.Y. 1999).

## IV. PUNITIVE DAMAGES CANNOT STAND.

### A. Punitive Damages Are Not Available as a Matter of Law.

Cognizant's Rule 50(b) challenge to the punitive damages award should prevail for three reasons. *First*, Cognizant did not waive its Rule 50(b) challenge to punitive damages. In *Tolbert*, defendants' Rule 50(a) arguments were irreconcilable with their Rule 50(b) punitive damages argument because they not only failed to challenge punitive damages or the requisite mental state, but also affirmatively advanced arguments *supporting* a finding of "reckless or callous indifference." *Tolbert v. Queens Coll.*, 242 F.3d 58, 77 (2d Cir. 2001) (defendants argued that plaintiff may have proved that defendants "were out to get [plaintiff] because of personal animus"). By contrast, Cognizant argued that Plaintiff offered "no evidence" to suggest that retaliatory bias, rather than legitimate business reasons, drove the termination decision, necessarily challenging the retaliatory intent on which Plaintiff's punitive-damages claim depends. Tr. 777:14–780:16. Accordingly, *Tolbert* is inapplicable. *Miranda-Ortiz v. Deming*, 2001 WL 604017, at *14 (S.D.N.Y. June 1, 2001).

*Second*, Plaintiff improperly conflates liability with heightened culpability. Plaintiff did not distinguish the ample caselaw demonstrating his heightened burden. And, though acknowledging he had to prove more than ordinary retaliation, Plaintiff identifies no evidence of malicious, reckless, or consciously unlawful conduct beyond the same evidence underlying his retaliation claim. Opp. 24-26. If that were sufficient, punitive damages would be available in every retaliation case. Plaintiff also did not identify evidence that any decision-maker believed his conduct violated the law. Opp. 24 (citing Tr. 599:1-15, 699:10-18 (Livingston and Neveras testifying they would take complaints seriously)).

*Third*, Plaintiff's contention that Cognizant's lawsuit was part of the same "course of conduct" as his termination is untenable (Opp. 25), where Cognizant's later lawsuit admittedly involved different decision-makers, different conduct, a non-party plaintiff, events years after his termination, and no judicial finding of retaliation. Mot. 26. Despite Plaintiff's attempt to minimize the Ed Cox testimony (Opp. 26), Plaintiff emphasized it during his summation, again implying a connection between Cognizant's supposed retaliation and two non-parties' deaths (Tr. 817:1-5), again in contravention of the Court's prior holding (3/19/26 Tr. 4:17-5:5).

**B. Alternatively, Any Punitive Damages Award Should Be Remitted.**

Alternatively, Plaintiff's punitive damages award should be remitted because it is constitutionally excessive: the record lacks highly reprehensible conduct, Cognizant maintained anti-retaliation policies, and comparable cases sustain far smaller awards. Plaintiff principally argues that the punitive-to-back pay ratio is 1:1 (Opp. 25-27), but that is only one factor—not the most important—and, regardless, is illusory because economic damages are unsupported.

Plaintiff largely ignores the *State Farm v. Campbell*, 538 U.S. 408 (2003) factors that matter most here: reprehensibility and comparable awards. Instead, he argues that because Cognizant denied retaliating and offered legitimate explanations for his termination, the jury could infer the sort of "deceit" that justifies a $4.2 million punitive damages award. Opp. 26-27. That argument proves too much. If denying retaliation and defending an employment decision sufficed to establish heightened reprehensibility, every retaliation defendant would face extraordinary punitive damages. Plaintiff cites no authority for such a rule, nor does he identify evidence that any decisionmaker acted with malice, knowingly violated the law, concealed unlawful conduct, or otherwise engaged in conduct that distinguishes punitive-damages cases from ordinary

employment disputes.[6] To the contrary, the only discrimination complaint supported by contemporaneous documentation (age) was investigated and addressed. Mot. 29. Plaintiff's alternative theory—that Cognizant ignored his complaints to protect its business model—rests on speculation from Israel's testimony and does not demonstrate the requisite heightened culpability.

Plaintiff likewise fails to identify comparable cases supporting an award of this magnitude. Rather than engage with Cognizant's cases remitting far smaller punitive awards, Plaintiff falls back on a purported 1:1 ratio. But ratio is but one guidepost and not the most important. His only case involving a similar award, *Applestein v. Kleinhendler*, 2025 U.S. Dist. LEXIS 63397 (E.D.N.Y. Apr. 2, 2025), involved legal malpractice, fraudulent inducement, and exploitation of a vulnerable adult—conduct far more reprehensible than anything alleged here. 2025 WL 990804, at *1 (E.D.N.Y. Apr. 2, 2025). Nor does Cognizant's size justify a windfall. Even in *Rowe v. Google LLC*, involving one of the world's largest companies, the court reduced a $1 million punitive award to $250,000. 2026 WL 915224, at *14-15 (S.D.N.Y. Apr. 3, 2026). Plaintiff offers no basis for sustaining an award sixteen times larger.

[6] *E.g.*, *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 251 (S.D.N.Y. 1999) (malice where relevant decisionmakers made affirmative efforts to conceal their discriminatory motives).

Respectfully submitted,

*/s/ A. Klair Fitzpatrick*


Hanna E. Martin
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
hanna.martin@morganlewis.com

Celina Antonellis (*pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Tel: 617.341.7700
celina.antonellis@morganlewis.com

A. Klair Fitzpatrick (*pro hac vice*)
Jack Dodds (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103-3007
Tel: 215.963.5000
Fax: 215.963.5001
klair.fitzpatrick@morganlewis.com
john.dodds@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**


Dated: June 19, 2026

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITS

Pursuant to Local Rule 7.8(b), I certify that this brief complies with the word-count limit because, according to the word count feature of Microsoft Word, the body of the brief contains 3,497 words.

*/s/ A. Klair Fitzpatrick*
A. Klair Fitzpatrick
*Counsel for Defendants*

Dated: June 19, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2026, all counsel of record were served with this Reply Brief in Further Support of Defendant's Renewed Motion for Judgment as a Matter of Law, Motion for New Trial or Remittitur, and Motion to Amend the Judgment via CM/ECF.

*/s/ A. Klair Fitzpatrick*
A. Klair Fitzpatrick
*Counsel for Defendants*